# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3792 | **DATE** | 11/30/2004 |
| **CASE TITLE** | Civix vs. Motorola | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Verizon Information Services, Inc.'s Motion for Summary Judgment on the basis that its activities are licensed under previous settlement agreements involving Plaintiff CIVIX-DDI, LLC is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | DEC 0 1 2004 | |
| | Notified counsel by telephone. | date docketed | 200 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| TH✓ | courtroom deputy's initials | Date/time received in central Clerk's Office    mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CIVIX-DDI, LLC,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　v.　　　　　　　　　　　　　　　　) No. 03 C 3792
　　　　　　　　　　　　　　　　　　)
CELLCO PARTNERSHIP d/b/a　　　　　　)
VERIZON WIRELESS; EXPEDIA,　　　　　)
INC., TRAVELSCAPE, INC., and　　　　　)
VERIZON INFORMATION SERVICES,　　　)
INC.,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　)

DOCKETED
DEC 0 1 2004

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff CIVIX-DDI, LLC ("CIVIX") filed this suit against several defendants, including Defendant Verizon Information Services, Inc. ("VIS"), alleging infringement of various claims of U.S. Patent Nos. 6,385,622 ("the '622 patent"), 6,408,307 ("the '307 patent), 6,415,291 ("the '291 patent"), 6,339,744 ("the '744 patent"), and 6,473,692 ("the '692 patent").

VIS moved for summary judgment of no liability for infringement on the basis that its activities are licensed under previous settlement agreements between Navigation Technologies Corporation ("NavTech") and CIVIX (the "NavTech Agreement"), and between MapQuest.com, Inc. ("MapQuest") and CIVIX (the "MapQuest Agreements"). For the reasons discussed below, the Court grants in part and denies in part VIS's Motion.

1



## BACKGROUND

I.  **The Parties**

CIVIX is a Colorado limited liability company having a principal place of business in Virginia. (R. 150-1; Def.'s Stmt. Und. Facts No.1; R.185-1; Pl.'s Resp. to Def.'s Stmt. Und. Facts No.1 (collectively "SUF").) CIVIX owns various United States patents, including the patents-in-suit. (SUF No. 2.)

VIS operates the web site www.superpages.com ("Superpages") through its wholly owned subsidiary, Verizon Directories Corp. ("VDC"). (SUF No. 20.)[1] Between June 27, 1996 and June 30, 2000, VDC was known as GTE News Media Services. Between June 30, 2000 and January 31, 2002, VDC was known as Verizon New Media Services Inc. *Id.*

VIS, through operating its Superpages web site, has been a customer of the MapPoint business group of Microsoft Corporation ("MapPoint") since July 2002. (SUF No. 21.) MapPoint provides VIS with certain services, such as providing maps illustrating business listings. *Id.* In creating these maps, MapPoint, at least in some instances, uses data obtained through a licensing agreement with NavTech. (SUF No. 23.) Once MapPoint creates the maps, it provides the maps to Superpages in the form of a universal resource locator ("URL") packaged into a responsive web page. (SUF No. 24.)

---

[1] Although CIVIX disputes the process by which the Douglas Heatherly Declaration was drafted, it does not dispute the underlying factual contention. The Court has reviewed the record including both the Heatherly and Goode depositions and deems SUF No. 20 admitted to the extent the Court cites such facts in this Opinion. To avoid confusion, the Court uses the term VIS to include the entity directly operating the Superpages web site at issue in this case. As VIS correctly points out, even if VIS is not a direct customer of either NavTech or MapQuest, each of the relevant agreements pertains to both direct and indirect customers, which certainly covers VIS.

2

## II. The NavTech Agreement

NavTech attempted, on October 27, 1998, to provoke an interference at the United States Patent and Trademark Office ("PTO") between itself and CIVIX by filing U.S. Patent Application No. 09/179,299 ("Interference Application"). (SUF No. 11.) In the prosecution of the Interference Application, NavTech sought to have itself declared as the first and true inventor of certain mapping technologies described in both the Interference Application and an issued CIVIX patent (U.S. Patent No. 5,682,525). *Id.* In 1999, CIVIX filed a patent infringement suit against NavTech in the Northern District of Illinois. (Civil Action No. 99 C 4140.)

CIVIX and NavTech entered into the NavTech Agreement on January 18, 2000, settling the pending litigation and interference. (SUF No. 12.) The NavTech Agreement required NavTech to assign the Interference Application to CIVIX, and provide all documentary evidence related to the application to CIVIX. In return, CIVIX granted a license under the "CIVIX Patents" to the "NAVTECH GROUP to engage in any Commercial Activity at its sole discretion involving or relating in any way to NAVTECH Technology." (R. 150-1; Ex. 1 at ¶6.a.)

In addition, in the NavTech Agreement, CIVIX covenanted never to sue:

> any direct or indirect customer or end user of a NAVTECH COMPANY, and/or of any NAVTECH Technology, with respect to or in any way relating to the NAVTECH Technology, including without limitation any Commercial Activity by any such customer or end user relating in any way to (1) all or part of the NAVTECH Technology or (2) any products, processes, systems, and/or services that use and/or incorporate all or any part of the NAVTECH Technology.

*Id.* at ¶9.a.ii.

VIS's Superpages web site uses "NAVTECH Technology" in performing at least some its functions. (SUF Nos. 21-27.) The parties dispute whether any of the Superpages functions

3

accused of infringement in this case relate to or use in any way the "NAVTECH Technology."

## III. The MapQuest Agreement

CIVIX filed a patent infringement suit against MapQuest.com, Inc. ("MapQuest") in 1999 in the United States District Court for the Northern District of Colorado. (Civil Action No. 99-B-172.) CIVIX and MapQuest entered into a License Agreement and a Settlement Agreement on May 3, 1999, thereby settling the pending lawsuit. (SUF Nos. 28 and 29.)

The MapQuest License Agreement granted MapQuest a license under the "CIVIX patents":

> (i) to make, create, modify, improve, design, have made, import, use, sell or offer for sale, sublicense, transfer, and/or assign any and all past, present and future MAPQUEST Technology covered by any claim of the CIVIX patents, (ii) to sublicense, transfer, and/or assign to any MAPQUEST customer the right to undertake and and all past, present, and future Permitted Uses with respect to the MapQuest Technology, and (iii) with respect to (i) and (ii) above, the concurrent right of use by MapQuest's end users, and by each such customer's customers and end users, of the MapQuest Technology and the Permitted Uses.

(SUF No. 32.) The MapQuest Settlement Agreement released and forever discharged:

> MAPQUEST and its past and present customers and any of their respective licensees or end users ...([] solely with respect to MAPQUEST Technology and Permitted Users) from any and all claims, demands, or causes of action of any nature whatsoever, at law or in equity, whether or not known, arising prior to the date of this Agreement, that relate in anyway to the CIVIX Patents...

(SUF No. 34.) Additionally, in the MapQuest Settlement Agreement, CIVIX covenanted and agreed never to:

> bring any lawsuit, cause of action, claim, or demand of any kind against... (ii) any MAPQUEST customer, with respect to the creation modification, improvement, design of, or any manufacture, importation, use, sale, or offer for sale by any customer of the MAPQUEST Technology of the Permitted Uses, or (iii) any MAPQUEST end user, or any MAPQUEST customer's customer or end user, with respect to the MAPQUEST Technology or the Permitted Uses.

(SUF No. 35.)

Between March 1998 and July 2002, the VIS-owned entity operating the Superpages web site was a customer of MapQuest. (SUF No. 38.) MapQuest provided the Superpages web site with certain services, including maps that illustrate business listings. (SUF No. 39.) When a Superpages' user requested a map, Superpages sent information reflecting that request to MapQuest. *Id.* In response, MapQuest created the maps and packaged the map into a graphics interchange format ("GIF") computer file, which Superpages repackaged into a web page provided to the user. (SUF No. 40.) The parties dispute whether any of the Superpages functions accused of infringement in this case related to or used in any way the "MAPQUEST Technology" or "Permitted Uses."

## ANALYSIS

### I. Legal Standards

#### A. Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter off law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must believe the evidence of the non-movant, and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party can successfully oppose summary judgment only if it presents definite competent

5

evidence to rebut the motion. *Equal Employment Opportunity Comm'n v. Roebuck & Co.*, 223 F.3d 432, 437 (7th Cir. 2000.)

### B. Patent License Defense

The party asserting the affirmative defense of a patent license bears the burden of proving its defense. *See McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995). An action can infringe a patent only if carried out "without authority." 35 U.S.C. § 271(a),(f),(g). The determination of whether a patent license protects a certain accused activity is typically a question of contract interpretation. *See Intel Corp. v. VIA Tech., Inc.*, 319 F.3d 1357, 1361 (Fed. Cir. 2003).

### C. Contract Interpretation

Contract interpretation, including the preliminary question of whether a contract is ambiguous, is a question of law. *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 705 (7th Cir. 1995). Under Illinois law, contract interpretation begins with the language of the contract itself. *Emergency Med. Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1060-61 (7th Cir. 1996). "If a contract is clear on its face and the text contains no clue that the contract might mean something different from what it says, then the inquiry is over - no evidence outside the contract may be considered." *Home Ins. Co. v. Chicago & Northwestern Transp. Co.*, 56 F.3d 763, 767 (7th Cir. 1995). Thus, the threshold inquiry is whether the contract is ambiguous on its face. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). A contract is intrinsically ambiguous if the contract language is reasonably susceptible to more than one meaning. *Id.* A contract is not ambiguous simply because the parties do not agree on the meaning of its terms. *Id.*

### D. Third Party Beneficiaries

It is not necessary that the contract identify a third party beneficiary by name. Rather, the contract may define a third party by describing the class to which the third party belongs. *Tax Invs., Ltd. v. Federal Deposit Ins. Corp.*, 763 F. Supp. 1452, 1456 (N.D. Ill. 1991). A third party may sue for breach of a contract formed for its benefit. *Golden v. Barenborg*, 850 F. Supp. 716, 723-24 (N.D. Ill. 1994), *aff'd*, 53 F.3d 866 (7th Cir. 1995).

## II. VIS's License Defense to Patent Infringement

### A. The NavTech Agreement

Under the NavTech Agreement, CIVIX granted a license under the "CIVIX Patents" to the "NAVTECH GROUP" to engage in any Commercial Activity at its sole discretion involving or relating in any way to "NAVTECH Technology." (R. 150-1; SUF Ex. 1 at ¶6.a.) The parties agree that the "CIVIX Patents" include the '622, '307, and '291 patents at issue here.

#### 1. VIS is a Member of the "NAVTECH GROUP"

VIS contends that it is a member of the "NAVTECH GROUP" and therefore a third party beneficiary to the NavTech Agreement. Pursuant to the NavTech Agreement, the "NAVTECH GROUP" includes "any direct or indirect customer of any NAVTECH Technology; and/or any direct or indirect end user of and NAVTECH Technology." (*Id.* at ¶1.k.) The NavTech Agreement defines "NAVTECH Technology" as "any database of any NAVTECH COMPANY, purchased by any NAVTECH COMPANY and/or licensed to any NAVTECH COMPANY, such as a geographic database including information about business, historical and other sites and/or points of interest." (*Id.* at ¶1.j.) Therefore, the "NAVTECH GROUP" includes any entity that is a direct or indirect customer of any NavTech database.

7

CIVIX attempts to create an ambiguity under the "NAVTECH GROUP" definition by arguing that VIS is not a customer of NavTech because its use of NavTech databases is insignificant. The NavTech Agreement, however, does not require that a member of the "NAVTECH GROUP" engage in significant use of a NavTech database. Rather, the NavTech Agreement only requires that the "NAVTECH GROUP" include any entity that is a direct or indirect customer of any NavTech database.

VIS purchases maps, driving directions, and other information for its Superpages web site from MapPoint, which in turn purchases this data from NavTech. (SUF No. 27). While CIVIX disputes that "'Superpages' is an indirect customer of NavTech technology as that term is used in the NavTech Settlement Agreement," the Court determines the meaning of the contract. *See Bourke*, 159 F.3d 1032, 1037 (holding that if the contract is unambiguous, the Court can interpret the contract as a matter of law). In order to qualify as a member of the "NAVTECH GROUP," one need only be an indirect customer of one of the NavTech's database products. (R. 150-1; SUF at Ex. 1 at ¶1.k.) By using Navtech data with the Superpages web site, VIS is an indirect customer of a NavTech database and is thus part of the NAVTECH GROUP as a matter of law.

### 2. Genuine Isssues of Material Fact Exist as to Which VIS Activities are Licensed

The NavTech Agreement license only covers commercial activity involving or relating to "NAVTECH Technology." (R. 150-1; Ex. 1 at ¶6.a.) As noted above, "NAVTECH Technology" includes NavTech's database products. VIS, therefore, has a license for any activities that involve or relate to NavTech database products.

VIS argues that the Superpages web site uses data "involving or relating in anyway to the

8

NavTech Technology" because the web site's map and driving directions are obtained from MapPoint who generates such data using NavTech data. VIS further argues that, even when the Superpages web site does not use NavTech data, the map and driving directions generated nonetheless involve or relate to NavTech Technology, and are thus covered by the NavTech Agreement. CIVIX responds that it is not accusing Superpages' functionality that uses NavTech databases of infringement. Specifically, CIVIX contends that Superpages infringes the asserted patent claims by generating and providing a listing of business names and addresses in a specified category and geographic vicinity without using NavTech data.

At this point in the case, a genuine dispute exists as to which, if any, accused functions of the Superpages web site involve or relate to NavTech dataabases and are therefore licensed. The Court notes that it has not yet construed the patent claims and it is possible that after the *Markman* process the Court may be able to resolve this issue as a matter of law.

### 3. CIVIX has Covenanted Not to Sue Only Activities Involving or Relating to "NAVTECH Technology"

The NavTech Agreement states that CIVIX cannot "bring any claim, demand, and/or causes of action of any kind against any direct or indirect customer or end user of a NAVTECH Company, and/or and NAVTECH Technology, with respect to or in any way relating to the NavTech Technology." (R. 150-1; SUF Ex. 1 at ¶9.a.i.) VIS argues that CIVIX agreed to never sue NavTech's indirect customers whether or not the lawsuit targeted "NAVTECH Technology."

The Court disagrees with VIS's contention. Importantly, the NavTech Agreement states that CIVIX would not bring a suit against an indirect customer of NavTech "with respect to or in any way relating to the NavTech Technology." *Id.* As discussed above, CIVIX alleges that

9

certain Superpages' functionality infringes without using "NAVTECH Technology." The Court cannot interpret the covenant not to sue as precluding CIVIX from suing even activities that do not use "NAVTECH Technology." Thus, to the extent the accused Superpages functionality does not involve or relate to a NavTech database, the NavTech Agreement's covenant does not preclude CIVIX from bringing suit.

At this point in the case, a genuine dispute exists as to which, if any, of VIS's accused activities involve or relate to "NAVTECH Technology" and are thus covered by CIVIX's covenant not to sue.

### 4. CIVIX's Covenant Not to Sue Extends to the "Go2 Patents"

VIS is correct that the covenant not to sue in Paragraph 9.a. of the NavTech Agreement is broader than the license provision in Paragraph 6 because the Agreement limits the latter, but not the former, to "CIVIX Patents." (R. 150-1; SUF Ex. 1 at ¶¶6 and 9.) Rather, the covenant not to sue is only limited to "any claim, demand, and/or any cause of action of any kind" relating to "NAVTECH Technology." (*Id.* at ¶9.a.) Therefore, as a matter of law, the covenant not to sue covers the "Go2 Patents," the '692 and '744 patents. As discussed above, whether or not CIVIX is in fact accusing of infringement VIS activities that involve or relate in any way to "NAVTECH Technology" is a separate issue and is genuinely disputed at this point in the case.

### B. The MapQuest Agreement

In the MapQuest License Agreement, CIVIX granted a license under the CIVIX Patents to MapQuest "to sublicense, transfer, and/or assign MAPQUEST customers the right to undertake any and all past, present, and future Permitted Uses with respect to MAPQUEST Technology." (SUF No. 32.) The parties do not dispute that the patents-in-suit asserted against

10

VIS are "CIVIX patents" as defined by the MapQuest License Agreement.

### 1. VIS Was a Customer of MapQuest from March 1998 to July 2002

VIS contends the MapQuest Agreements protect from liability its accused activity from March 1998 to July 2002 because during that time VIS was a customer of MapQuest. Specifically, VIS contends that its operation of the Superpages web site made it a customer and end user of MapQuest between March 1998 and July 2002. During this time, MapQuest provided the Superpages web site with maps illustrating business locations. (SUF Nos. 38-40.) Under these facts, VIS was a customer of MapQuest.

### 2. Only VIS's Accused Activities that Used MapQuest Software Were Licensed

The license, however, does not provide a blanket license to MapQuest customers to undertake all "Permitted Uses." Rather, the MapQuest License Agreement only provides MapQuest customers the right to undertake Permitted Uses with respect to "MAPQUEST Technology." (SUF No. 32.) The MapQuest License Agreement defines "MAPQUEST Technology" as including software products, equipment, systems, and services developed and created by MapQuest. (SUF No. 30.) In turn, the MapQuest License Agreement defines the range of "Permitted Uses" for the "MAPQUEST Technology" to include (i) the use of MapQuest Technology by customers, (ii) the right of customers to incorporate MapQuest Technology into software products, (iii) the right for customers to modify, enhance, or revise the MapQuest Technology in connection with other software products, and (iv) the right for customers to sublicense, and/or resell software, products, equipment, system, and services. (SUF No. 30.) Read in context, the MapQuest License Agreement grants a license to those aspects of customer

11

products incorporating MapQuest software.

VIS argues that, as a customer of "MAPQUEST Technology," VIS was granted a license to any and all activities under the "CIVIX Patents." This interpretation of the Agreement is too broad. The MapQuest License Agreement and MapQuest Settlement Agreement only provide customers with a license for software products to the extent the software uses or incorporates MapQuest Software. Paragraph 4 of the Agreement further supports this interpretation by expressly granting no rights to customers for "products, equipment, services, or systems not supplied by MAPQUEST and which products, equipment, services, or systems infringe the CIVIX patents." (R. 183-1; Pl.'s Resp. Def.'s Mot. Summ. Judgment Ex. 2 at ¶4.) As a result, to the extent that the accused activities did not utilize "MAPQUEST Technology," both of the MapQuest Agreements do not cover those activities. VIS has failed to prove at this stage which products and services accused of infringement by CIVIX, if any, used "MAPQUEST Technology."

### 3. CIVIX has Covenanted Not to Sue Only Activities Relating to "MAPQUEST Technology"

VIS further argues that CIVIX agreed never to bring an action against any MapQuest customer who sublicensed, purchased, or used "MAPQUEST Technology" or who otherwise engaged in "Permitted Uses." According to VIS, CIVIX covenanted not to sue any MapQuest customer of "MAPQUEST Technology," irrespective of the cause of action.

Once again, VIS interprets this clause to broadly. Paragraph 8 of the MapQuest Settlement Agreement specifically states that the covenant not to sue applies "only with respect to the MapQuest Technology and/or Permitted Uses." (*Id.* at ¶8.) Importantly, CIVIX specifically

12

retains all other rights against MapQuest Customers that infringe the CIVIX patents using technology supplied by someone other than MapQuest. (*Id.* at ¶4.) CIVIX only agreed not to bring an action against products and services that use or incorporate MapQuest software. To the extent that the accused products and services do not utilize "MAPQUEST Technology," the covenant not to sue does not cover those products and services.

As with the NavTech Agreement, these facts require denial of VIS's motion seeking summary judgment on the accused products and services that do not use "MAPQUEST Technology." CIVIX has only covenanted not to accuse of infringement those activities of VIS that used "MAPQUEST Technology."

## CONCLUSION

For the reasons discussed above, VIS's Motion is granted in part because there is no genuine dispute that VIS is a member of the "NAVTECH Group" under the NavTech Agreement and has a license to the '622, '307, and '291 patents to the extent its accused activities involve or relate in any way to "NAVTECH Technology." CIVIX is subject to a covenant not to sue, under the '622, '307, '297, '744, or '692 patents, any activities of VIS that relate in any way to "NAVTECH Technology." VIS's Motion is also granted in part because there is no genuine dispute that VIS is a MapQuest Customer from March 1998 to July 2002 and had a license to the patents-in-suit to the extent its accused activities were "Permited Uses" of "MAPQUEST Technology." CIVIX has covenanted not to sue VIS's activities relating to "Permitted Uses" of "MAPQUEST Technology." VIS's Motion is denied in part because at this point in the case genuine disputes exist as to which, if any, of VIS's accused activities involve or relate to either "NAVTECH Technology" under the NavTech Agreement or "Permitted Uses" of "MAPQUEST Technology" under the MapQuest Agreements.

DATED: November 30, 2004                    ENTERED

                                            _____
                                            AMY J. ST. EVE
                                            United States District Court Judge