IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 3792 |
| | ) | |
| CELLCO PARTNERSHIP d/b/a | ) | |
| VERIZON WIRELESS; EXPEDIA, | ) | |
| INC., TRAVELSCAPE, INC., and | ) | |
| VERIZON INFORMATION SERVICES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff CIVIX-DDI, LLC ("Civix") filed this suit against several defendants, including

Expedia, Inc. ("Expedia"), and Travelscape, Inc. ("Travelscape")[1] alleging infringement of

various claims of U.S. Patent Nos. 6,385,622 ("the '622 patent"), 6,408,307 ("the '307 patent),

6,415,291 ("the '291 patent"), 6,339,744 ("the '744 patent"), and 6,473,692 ("the '692 patent")[2].

Expedia moves for summary judgment of both noninfringement and invalidity of all asserted

claims. Expedia also moves for partial summary judgment on Civix's failure to comply with 35

---

[1] Because Expedia and Travelscape jointly submitted briefing, the Court will only refer to Expedia when collectively referring to Expedia and Travelscape unless it is necessary to refer to them separately. The other defendants that Civix sued in this action have settled.

[2] The patents originally asserted by Civix are included in order in the record at R. 320-1, Exs. 1-5. For ease of reference the Court will cite to the patents by patent number. Civix no longer asserts infringement of the '744 patent. The Court refers to the '622, '307, and '291 patent as the "Civix patents," and refers to the '692 patent as the "Go2 patent."

U.S.C. § 287(a), willfulness, and conception. Civix moves for partial summary judgment of no inequitable conduct. For the reasons discussed below, the Court grants in part and denies in part both Expedia's motion and Civix's motion.

## BACKGROUND

### I.    Parties

Civix is a Colorado limited liability company having a principal place of business in Virginia. (R. 388-1; Pl.'s Resp. Def.'s Stmt. Undisputed Facts ("DSUF") ¶ 1.)[3] Expedia is a corporation organized and existing under the laws of the state of Washington with its principal place of business in Washington. (*Id.*) Travelscape is a wholly-owned subsidiary of Expedia organized and existing under the laws of the state of Nevada with its principal place of business in Nevada. (*Id.*)

### II.    Expedia's Website

The Expedia website (www.expedia.com), the Travelscape website (www.travelscape.com), and the related WWTE sites (referred to collectively as the "Expedia website") include a portion that is referred to as the Lodging Wizard and a portion that is referred to as the Car Wizard. (R. 388-1; DSUF ¶ 7.) The Expedia website includes a web server, several internal servers, and database servers. (*Id.* ¶ 8.) Expedia's users employ computing devices such as personal computers to transmit requests to the Lodging and Car

<hr>

[3]The Court refers to the parties statements of undisputed facts as follows: Defendant's Response to Plaintiff's Statement of Undisputed Facts supporting Defendant's motion for summary judgment, (R. 385-1), as "PSUF;" Defendant's Response to Plaintiff's Statement of Additional Undisputed Facts opposing Defendant's motion for summary judgmnet, (R. 397-1), as "PSAUF;" Plaintiff's Response to Defendant's Statement of Additional Undisputed Facts opposing Plaintiff's motion for summary judgment, (R. 365-1), as "DSAUF."

Wizard portions of the Expedia website. (*Id.* ¶ 9.) More particularly, Expedia's users select the Hotel Wizard or the Car Wizard, specify a location, and generate a request signal using their computer. (*Id.*) Expedia's users also use their computers to view the results received from the Expedia website. (*Id.*) Expedia's users communicate their requests from the user's computing device to their internet service provider ("ISP"). (*Id.* ¶ 10.) The user's ISP communicates with an ISP providing access to the Expedia website. (*Id.*) The Expedia web server receives the requests from Expedia's users. (*Id.* ¶ 11.) The web server communicates with internal servers. (*Id.*) The web server and the internal servers communicate with Expedia's internal databases. (*Id.*)

## III.   The Prior Art

### A.   CompuServe

Expedia's Exhibit 18 is a publication by Jill Ellsworth, Ph.D. & Matthew Ellsworth, titled "Using CompuServe." (DSUF ¶ 35.) "Using CompuServe" states that "CompuServe"[4] had been in existence for more than a decade in 1994 and that it had over one million "members." (*Id.*) During the period 1981-1996, Alexander Trevor held the position of Executive Vice President and Chief Technical Officer of CompuServe, Inc. (*Id.* ¶ 36.) During the period of 1974-1996, CompuServe, Inc. employed David Eastburn and from 1991 through 1993 he was responsible for all of CompuServe, Inc.'s online content and services. (*Id.* ¶ 37.) In December 1993, Eastburn formed and headed CompuServe, Inc.'s Advanced Technology Group, which was responsible for assessing evolving technologies and their impact on CompuServe's

---

[4]Civix disputes whether Expedia has defined any specific combination of hardware and software at any particular date as "CompuServe." (DSUF ¶ 35.)

3

business. (*Id.*)

In 1993, CompuServe members were able to use personal computers and the CompuServe network to access information stored in CompuServe's databases located in Ohio and in third-party databases located elsewhere. (*Id.* ¶ 38.) CompuServe required subscribers to first establish an account before they could access CompuServe's databases. (*Id.*) Thereafter, subscribers could dial the CompuServe network using a local access number and connect through leased telephone lines to CompuServe host computers in Ohio. (*Id.*)

**B.     Sabre**

The book "How to Get the Most Out of CompuServe" (5th ed. 1993) by Charles Bowen and David Peyton states that as of the writing of that book there existed a system called "Easy Sabre" that stored information on airlines, hotels, and car rental companies. (*Id.* ¶ 39.) During the period 1992-1996, Michael Robinson was involved with the Sabre Holdings, Inc. ("Sabre") hotel package. (*Id.* ¶ 40.) Robinson testified that prior to 1994, Sabre maintained a database in Tulsa, Oklahoma. (*Id.* ¶ 39.) According to Robinson, travel agents could use computers located anywhere in the United States to obtain information relating to airlines, hotels, and car rental companies stored in the Tulsa database. (*Id.* ¶ 41.) Robinson testified that prior to 1994, Sabre developed "EAAsy Sabre," which provided home computer users a "consumer friendly" way, through CompuServe, to access airline, hotel, and car rental information stored in Sabre's Tulsa database. (*Id.* ¶ 41.) The book "How to Get the Most Out of CompuServe" provides that EAAsy Sabre enabled users to look for information regarding 18,000 hotels and 45 car rental companies." (*Id.* ¶ 42.) Prior to 1994, CompuServe members were able to use their personal computers and EAAsy Search to search a database for information on hotels and car rental

4

companies. (*Id.* ¶ 42.) Robinson testified that prior to 1994, the Sabre database stored hotel information such as location, rates, availability, descriptive content, credit card rules, and everything necessary to make a reservation. (*Id.* ¶ 43.) According to Robinson, the Sabre database stored hotel locations using address and zip code. (*Id.*)

## IV.   The Asserted Patents

Civix asserts that the patents in suit relate to systems used to locate points of interest in geographical regions by accessing a remote database. The parties logically divide the four asserted patents into two categories. The parties refer to the '622, '307, and '291 patents as "the Civix patents." These patents all derive from U.S. Patent Application No. 08/371,425.

The second category consists of the '692 patent, which the parties refer to as the "Go2 patent." Unlike the Civix patents, the Go2 patent did not derive from the '08/371,425 application. Instead, Civix acquired the '692 patent from Go2, one of the original Defendants in this case. The Go2 patent derives from a chain of applications filed by other inventors, beginning with U.S. Patent Application No. 08/701,586.

## V.   Facts Related To Expedia's Inequitable Conduct Claims

### A.   The Patents

The '291 patent and '622 patent are continuations of United States Patent No. 6,408,307 ("the '307 patent"), which is a continuation of United States Patent No. 5,682,525 ("the '525 patent"). (PSUF ¶ 1.) The effective filing date of the '307 patent, the '291 patent, and the '622 patent is January 11, 1995. (*Id.* ¶ 2.) Hosain Alam was the Patent Examiner for the applications for the '525, '307, '291, and '622 patents. (*Id.* ¶ 3.) Curtis Vock was the attorney responsible for the prosecution of the applications for the '307, '291, and '622 patents. (*Id.* ¶ 4.)

**B.    The Colorado Action**

On January 26, 1999, Civix brought suit against a number of companies alleging

infringement of the '525 patent and United States Patent No. 4,974,170 in Civil Action 99-B-172

in the United States District Court for the District of Colorado (the "Colorado litigation"). (*Id.* ¶

5.) At his deposition, Mr. Vock testified that he informed Examiner Alam of the existence of the

Colorado litigation in a telephone interview that took place in January or February, 2001. (*Id.* ¶

20.) Mr. Vock spent several weeks creating an Information Disclosure Statement ("IDS") that

listed the prior art cited by the defendants in the Colorado litigation. (*Id.* ¶ 36.) Mr. Vock

submitted to Examiner Alam an IDS on February 8, 2001 in the '307 patent application ("the

'307 IDS"), and an IDS on January 17, 2002 in the '391 patent application. (*Id.* ¶ 37.) The '307

IDS and '291 IDS listed all references cited by the defendants in the Colorado litigation because

"someone had deemed this relevant enough to cite to us, so that [Mr. Vock], in fact, did not want

to remove anything from the IDS." (*Id.* ¶ 38.) In an office action dated August 12, 2001,

Examiner Alam wrote that the IDS "has been placed in the application file, but the information

referred to therein has not been considered. The references have not been provided." (*Id.* ¶ 39.)

Examiner Alam further explained:

> The IDS received on February 12, 2001, contains a mountain of material
> including approximately 244 U.S. patents, 64 published patent applications, and
> 290 non-patent references. The number of references is unusually high. Since the
> applicants have filed the IDS, it can be reasonable [sic] inferred that they are
> more likely to know which of the 598 references are relevant to the claimed
> invention. If the applicants have filed the IDS without knowing the relevance of
> references to the claims, then it would be reasonable to explore the necessity of
> such filing.

(*Id.* ¶ 39.) On December 14, 2001, Examiner Alam initialed almost all of the references on the

'307 IDS. (*Id.* ¶ 41.) On March 15, 2002, Examiner Alam initialed the majority of the

references on the '291 IDS. (*Id.* ¶ 42.) The Notice of Allowability for the '307 patent states "[t]he Applicant have [sic] also indicated that none of the references in the Information Disclosure Statement, filed on February 8, 2001, teach the fetching of spatial data from a remote database as recited in the claims." (*Id.* ¶ 49.) The Notice of Allowability for the '291 patent states "[t]he prior art of record, as discussed at length in the interview dated October 17, 2001, teaches the retrieval of spatial item of interest, however, does not teach the fetching of the item from a remote database as claimed." (*Id.* ¶ 50.)

### C.    The NavTech Litigation

On June 22, 1999, Civix brought suit against NavTech for infringement of the '525 patent in Civil Action 99-C-4140 in the United States District Court for the Northern District of Illinois (the "NavTech litigation"). (*Id.* ¶ 51.) Mr. Vock testified at his deposition that he informed Examiner Alam of the existence of the NavTech litigation. (*Id.* ¶ 52.) On October 27, 1998, NavTech attempted to provoke an interference between the 09/179,299 application by Behr (the "Behr '299 application") and the '525 patent by copying claims from the '525 patent. (*Id.* ¶ 53.) The Behr '299 application was a continuation of United States Patent No. 5,543,789 (the "Behr '789 patent"). (*Id.* ¶ 54.) Examiner Alam was the Patent Examiner for the Behr '299 application. (*Id.* ¶ 55.) Mr. Vock testified at his deposition that he discussed the potential interference with Examiner Alam in an interview on October 17, 2001. (*Id.* ¶ 56.)

Civix and NavTech settled the NavTech litigation on January 18, 2000. (*Id.* ¶ 57.) Under the settlement agreement, NavTech assigned to Civix the Behr '299 application. (*Id.* ¶ 58.) Under that agreement, NavTech also provided Civix with a box of documents relating to the "conception and reduction to practice" of the invention described in the Behr '299

application (the "NavTech documents"). (*Id.* ¶ 59.) Mr. Vock cited the Behr '789 patent in the '307 IDS and the '291 IDS. (*Id.* ¶ 61.) The '307, '291, and '622 patents list the Behr '789 patent on their faces. (*Id.* ¶ 62.) In fact, the Behr '789 patent was one of nine references selected by Examiner Alam to be listed on the face of the '622 patent. (*Id.* ¶ 63.) The filing date of the Behr '789 patent is June 24, 1994. (*Id.* ¶ 65.)

Mr. Vock did not provide Examiner Alam with copies of the NavTech documents. (*Id.* ¶ 66.) The United States Patent and Trademark Office declined to declare an interference between the Behr '299 application and the '525 patent. (*Id.* ¶ 69.)

## VI. The Court's Claim Construction

### A. The Civix Patents

On March 1, 2005, the parties submitted to the Court a Jointly Submitted Chart Of Agreed Claim Terms And Claim Terms Remaining in Dispute. (R. 264-1.) The parties agreed to the following claim constructions for terms from the Civix patents. "Associated category/ Category associated with the items of interest" means "a class with which items of interest have a relationship in a database." "Communicating" means "transmitting or otherwise conveying." "Database" means "a collection of related information organized for convenient access." "Geographic position/ Geographical position/ Geographic location/ Geographical location" means "a place within a geographic vicinity." "Geographic vicinity" means "a geographic region that includes and surrounds selected items of interest." "Indicating" means "pointing out or to, making known, showing." "Items of interest" means "services, products, geographic sites, architectural sites, stores, restaurants, public services and other items which the user of the invention may which (sic) to locate." "Locating" means "determining the place of." "Port/

8

Remote port/ Port of remotely accessing" means "a terminal; e.g., a personal computer with a modem, from which a user of the invention can access the database storing the information about the items of interest." "Position" means "the place occupied by a thing, person, etc. or in which a thing etc. is put; (a) situation, (a) site, (a) station." For the term "relative to," the parties provided that "this term is not a claim limitation." "Request signal representative of a selected category and geographic vicinity" means "a single electronic representation of a user's selection of at least one category and at least one geographic vicinity." "User" means "human being."

The parties also disputed the construction of several terms from the Civix patents. After briefing, and a *Markman* hearing on March 14, 2005, the Court made the following claim construction rulings. "Spatial detail" means "geographic information relating to an area or region." "Internet" means "a system of linked computer networks, worldwide in scope, that typically is associated with using TCP/IP as a standard protocol" and "internet" means "a group of networks that have been connected by means of a common communications protocol." "Remote" or "Remotely" means "separated by an interval or distance" with "separated" meaning "to be set or kept apart." (R. 273-1.)

## B. The Go2 Patents

For the Go2 Patents, the parties agreed to the following constructions. "Associating/Associated with" means "bringing into relationship." "Locational address" means "a ULA (a Universal Location Address) or a PLA (Proprietary Locational Address)." "User" means "a human being."[5]

---

[5]For both the Civix patents and the Go2 patent, the parties agreed to the construction of other terms that are not directly at issue in this motion. Those terms and constructions are set forth in the parties' Jointly Submitted Chart of Agreed Claim Terms and Claim Terms

As with the Civix patents, after briefing and a *Markman* hearing, the Court construed other terms that the parties disputed in the Go2 patents. "ULA" means "a universal locational address, which is defined by subdividing a geographic location into several independent districts, each with a name and a reference point. The reference point has a known locational address within a global referencing system. A coordinate system is placed on the district relative to the reference point, yielding a position indicator for locations within district. Combining the district name and the position indicator defines the local location." "PLA" means "proprietary locational address, which is a name, which will be unique within the district, that distinctly identifies a location with the district. A proprietary address is created by selecting a name, capturing positional information about the location associated with the name, checking that the name is unique in the district and storing the name with its associated locational information and feature data. Once stored, the name and the associated information may be slectively disseminated to users of locational systems." "Locational address defined based on a latitude/longitude" means "a ULA (Universal Locational Address) or a PLA (Proprietary Locational Address) that has a defined relationship with a global latitude/longitude coordinate system." (R. 273-1.)

## ANALYSIS

### I.  Legal Standard

#### A.  Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

Remaining in Dispute. (R. 264-1.)

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court considers the evidentiary record in a light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

### B. Local Rule 56.1

Local Rule 56.1(a)(3) "requires a movant to submit a statement of undisputed material facts that, according to the movant, entitles that party to judgment as a matter of law." *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000). That rule provides that the "statement [] shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting material, relied upon to support the facts set forth in that paragraph." L.R. 56.1(a)(3). As the *Malec* court explained: "the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response. Again, it is inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one." *Malec,* 191 F.R.D. at 583.

Local Rule 56.1(b)(3)(A) requires that a non-movant's response contain "a response to each numbered paragraph in the moving party's statement, including in the case of any disagreement specific references to the affidavits, parts of the record, and other supporting

materials relied upon." L.R. 56.1(b)(3)(A).[6]

Both Civix and Expedia have failed to comply with Local Rule 56.1, creating needless

expense and work.[7] Expedia attempted to circumvent the Court's page limits for summary

judgment briefing by including legal argument in its response and reply[8] Rule 56.1 statements.

Arguments related to the relevance of evidence are properly made in the memoranda supporting

or opposing summary judgment, not in the Local Rule 56.1 statements or responses. Civix also

failed to comply with Rule 56.1. Civix's statement of additional undisputed facts contain

lengthy paragraphs purporting to be individual facts, violating the requirement that the numbered

paragraphs be "short." *Malec,* 191 F.R.D. at 583.

## II.    Infringement Of Civix's Non-Asserted Claims

Expedia moves for summary judgment of noninfringement on all of the claims from the

patents in suit that Civix is not currently asserting.[9] During the course of this litigation, Civix

---

[6]A nonmovant may also file a statement of additional facts pursuant to Local Rule 56.1(b)(3)(B). The requirements for such additional facts are the same as those for the movant's statement of undisputed material facts under Local Rule 56.1(a)(3), including the requirement that the nonmovant set forth the additional facts in short numbered paragraphs. *Malec,* 191 F.R.D. at 584.

[7]The Court warns each party, and its counsel, that as the parties prepare for trial in this case, the Court expects trial counsel for both sides, as officers of the court, to comply with the local rules and the Court's pre-trial and trial requirements.

[8]Civix moved to strike Expedia's Reply in Support of its Local Rule 56.1 Statement. Because Expedia had requested and received the Court's permission to file such a Reply, the Court denied Civix's motion in part. Expedia's Reply, however, failed to comply with Local Rule 56.1, because it included in various places, legal argument, rather than factual disputes. Therefore, to the extent Expedia failed to comply with Local Rule 56.1 by making legal arguments in its Reply, the Court granted Civix's motion to strike.

[9]Civix asserts that Expedia infringes claims 6, 26, 47, and 56 of the '622 patent, claims 1, 6, and 22 of the '307 patent, claims 1, 5, 7, 14, 21, and 23 of the '291 patent, and claims 27, 28, 41, and 42 of the '692 patent.

has narrowed the number of claims that it is asserting against Expedia. (DSUF ¶ 3.) As Civix dropped claims from the case, Expedia never indicated that it desired to keep those claims as part of the case. In fact, Expedia repeatedly requested the Court's assistance to encourage Civix to narrow the claims. Accordingly, Expedia's argument that it is entitled to summary judgment because Civix fails to provide infringement contentions for claims that it is not asserting fails. The record does not contain any indication that the parties have been litigating the non-asserted claims. Also, Expedia's conduct throughout this case has indicated that it has consented to Civix dropping claims from this suit. On the facts of this case, it would be inequitable for Expedia to encourage Civix to narrow its asserted claims, and then later seek summary judgment on those same dropped claims, arguing that Civix failed to prosecute those claims. Expedia is not entitled to summary judgment on claims that are not part of this dispute.

Also, the doctrine precluding claim splitting does not entitle Expedia to summary judgment on these non-asserted claims. Expedia is not currently attempting to split its claims, and this issue is not before the Court. Granting summary judgment of noninfringement on the basis of the doctrine precluding claim splitting, at this stage, would amount to an improper advisory opinion. *See Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992) ("Under Article III of the Constitution, federal courts may only adjudicate "cases or controversies" and may not render advisory opinions.")[10]

---

[10]The Court has ruled that it is too late for Civix to add claims to this case, and has dismissed Civix's separate action, 04-C-8031, attempting to assert other claims from the patents in suit against Expedia after it was too late to assert those claims in this case. *See Civix-DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906 (N.D. Ill. May 2, 2005). Should Civix attempt to later assert against Expedia claims from the patents in suit, the court hearing that case will address the issue when it is fully ripe. Nothing in this opinion should be read as granting Civix permission to later assert claims from the patents in suit against Expedia.

### III. Infringement Of Civix's Asserted Claims

A determination of patent infringement is a two-step process in which the Court first construes the claims. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*). The trier of fact then compares the properly construed claims to the accused product to determine, as a question of fact, whether all of the claim limitations are present in the accused product. *Id.* at 1454; *Int'l Rectifier Corp. v. IXYS Corp.,* 361 F.3d 1363, 1369 (Fed. Cir. 2004). To prove infringement, the patentee must show that the accused product satisfies each claim limitation. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.,* 347 F.3d 1314, 1324 (Fed. Cir. 2003). This is known as the "All Elements Rule." *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed. 2d 146 (1997); *Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 935-36 (Fed. Cir. 1987) (*en banc*).

The Patent Act expressly provides for claims for indirect infringement. 36 U.S.C. §271 (b), (c). Indirect infringement "can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement." *Dynacore Holdings Corp. v. U.S. Phillips Corp.,* 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("To prevail under a theory of indirect infringement, [the patentee] must first prove that the defendants' actions led to direct infringement"). Under an indirect infringement theory, one who actively induces infringement of a patent is liable as an infringer. 35 U.S.C. §271(b); *Alloc Inc. v. Int'l Trade Com'n,* 342 F.3d 1361, 1374 (Fed. Cir. 2003) (a "patentee must show that an alleged infringer knowingly induced another to commit an infringing act to establish induced infringement under section 271(b)"); *C.R. Bard Inc. v. Advanced Cariovascular Sys., Inc.,* 911 F.2d 670, 674-75 (Fed. Cir. 1990) ("A person induces infringement under 271(b) by actively and

knowingly aiding and abetting another's direct infringement").

## A.  Claims 6 And 26 Of The '622 Patent

Claim 1 of the '622 patent states:

1.  System for remotely determining the position of a selected category of items of interest in selected geographic vicinity from a database, the system comprising:
(A) a database for storing information about a plurality of items of interest, the information including, for each of the items of interest, a geographical position and at least one associated category,
(B) a communications link for communicating between a user of the system and the database,
(C) an information controller for transmitting a portion of the information in the database to the user via the link upon receipt of a request signal representative of a selected category and geographic vicinity, the transmitted portion of the information including identification of geographic position for at least one of the items of interest within the selected category and geographic vicinity, and
(D) a port for remotely accessing the portion of information via the link, the port generating the request signal in response to inputs by the user which are representative of the selected category and geographic vicinity, the port having a user interface for accepting the inputs and for indicating to the user the position at least one of the items of interest in the selected category and geographic vicinity.

(DSUF ¶ 6.)  Claims 6 and 26 depend from Claim 1 and therefore include each of the limitations

of Claim 1.  35 U.S.C. § 112, ¶ 4 ("A claim in dependent form shall be construed to incorporate

by reference all the limitations of the claim to which it refers").  Expedia first argues that it does

not infringe Claims 6 and 26 because it does not use the claimed port or communications link.

The Court has construed the term "port" to mean a "terminal, e.g., a personal computer with a

modem, from which a user of the invention can access the database storing the information about

the items of interest."  The Court has also ruled that "user" refers to a "human being."  In

opposing summary judgment, Civix argues that Expedia does use the claimed system by

controlling its customers' use of the ports.[11]

## 1. Whether Expedia Uses A System Comprising Each Claim Element

Expedia argues that there is no evidence that Expedia uses third party users' "ports" for "remotely accessing" information in its own database. Expedia essentially argues that in order for it to infringe claims 6 and 26, which are system claims, Civix must prove that Expedia, itself, uses each component of the claimed systems. Expedia, however, does not cite any law supporting this proposition. Rather, claims 6 and 26 require "a system" comprising certain components. In arguing that Expedia does "use" the claimed system, Civix points to evidence that Expedia is connected to its customers and suppliers in such a way that Expedia does in fact use the claimed system. In the context of method claims, several courts have recognized that even when different entities perform the claimed steps of the method, a party is still liable for infringement if it is connected with the entity performing the other steps. *See Marley Mouldings Ltd., v. Mikron Indus., Inc.,* No. 02 C 2855, 2003 WL 1989640, *2-3 (N.D. Ill. April 30, 2003) ("A party cannot avoid direct infringement merely by having another entity perform one or more of the required steps when that party is connected with the entity performing one or more of the required steps"); *also see Cordis Corp. v. Medtronic Ave, Inc.,* 194 F.Supp.2d 323, 349 (D.Del. 2002) (*rev'd on other grounds*); *Faroudja Lab., Inc. v. Dwin Elecs., Inc.,* No. 97-20010 SW, 1999 WL 111788 (N.D. Cal. Feb. 24, 1999). The Federal Circuit has recently addressed the issue of what constitutes use of a patented system in the United States. *See NTP, Inc. v.*

---

[11]Civix also argues that Expedia is a co-infringer along with its customers and suppliers and is therefore jointly liable for infringement. Civix argues that Expedia induces the infringement of claims 6 and 26. Because the Court finds that genuine issues of fact exist whether Expedia, itself, uses the claimed system, the Court does not reach Civix's other arguments.

*Research In Motion*, 418 F.3d 1282, 2005 WL 1806123, *25-29 (Fed. Cir. 2005). In *NTP*, the plaintiff asserted system and method claims against Research in Motion's ("RIM") "BlackBerry" networks. RIM argued that its networks did not infringe because it housed the BlackBerry Relay component in Canada. Because the Relay component was an element of the asserted system claims, RIM contended that it did not use the claimed system in the United States as required by § 271(a). After recognizing the differences in method claims and system claims, the Federal Circuit held that the "use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, *i.e.,* the place where control of the system is exercised and beneficial use of the system obtained." *Id.* at *28 (citing *Decca Ltd. v. United States*, 544 F.2d 1070 (Ct. Cl. 1976)).

The Court recognizes that the Federal Circuit in *NTP* addressed the issue of when a system is used "in the United States" under § 271(a), rather than the question of what the law requires for an accused infringer to "use" a system under § 271(a). Nonetheless, the Court finds the above analysis highly instructive. The *NTP* court first recognized that the "situs of the infringement 'is wherever an offending act [of infringement] is committed.'" *NTP*, 2005 WL 1806123, *28 (citing *North Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994)). In order to determine where an act of infringement occurred, the Court must first determine what constitutes the act of infringement. In analyzing where the act of infringement occurred in *NTP*, the Federal Circuit recognized that courts have interpreted the term "use" broadly. *NTP*, 2005 WL 1806123, *28 (citing *Bauer & Cie v. O'Donnell*, 299 U.S. 1, 33 S.Ct. 616, 57 L.Ed. 1041 (1913) (noting that the predecessor to title 35 used the term "use" as "a comprehensive term" that embraced "within its meaning the right to put into service any

17

given invention")); *Webster's Third New International Dictionary* 2523 (1993) (defining "use" as to "put into action or service")). Based on the framework of its analysis, the Court interprets the Federal Circuit's holding as defining both where and when a "use" of a claimed system occurs. Accordingly, under the Federal Circuit's holding in *NTP,* an alleged infringer uses a claimed system when the alleged infringer exercises control over the system and obtains beneficial use of the system.

The question then becomes whether genuine issues of material fact exist whether Expedia exercises control over, and obtains beneficial use of, the claimed system. In arguing that Expedia uses the claimed system, Civix relies on the declaration of Clifford Kraft (the "Kraft Declaration"), as well as other evidence in the record. Because Expedia moves to strike the Kraft Declaration, the Court addresses each of these categories of evidence separately.

### a. The Kraft Declaration

Expedia moves to strike the Kraft Declaration, arguing that Civix failed to disclose Kraft as either a fact or expert witness. Whether the Kraft Declaration offers fact testimony, expert testimony, or both, its disclosure is untimely and unfairly prejudices Expedia. Even if Kraft offers solely fact testimony, as Civix argues, Civix neither disclosed Kraft on its initial disclosures pursuant to Rule 26(a)(1) nor supplemented these disclosures to include Kraft. Moreover, Civix offers no justifiable reason for failing to disclose Kraft until this late stage. Although Civix argues that it submits the Kraft Declaration in "direct response to Expedia's newly articulated argument that it neither controls nor empowers use of its website," (R. 377-1; Civix Resp. to Expedia's Mot. to Strike at 6), Civix offers no proof that Expedia's argument is in fact a surprise to Civix. Notably, Civix does not move to strike Expedia's "new argument."

Indeed, from the record before the Court, it is difficult to see how Civix could claim surprise at Expedia's argument that it does not "use" the claimed invention. Civix bears the burden of proving infringement, *Centricut, LLC v. Esab Group, Inc.,* 390 F.3d 1361, 1367 (Fed. Cir. 2004) ("The patentee has the burden of proving infringement by a preponderance of the evidence"), which includes proving that Expedia committed an infringing "act," *i.e.,* that it made, used, offered to sell, or sold the patented invention within the United States. 35 U.S.C. § 271(a). Civix has had ample time to discover the facts to prove its affirmative case.[12] Further, to the extent that Civix is offering Kraft as a mere fact witness to provide testimony on his use of the Expedia website, Civix has not shown why it could not have used a witness that was already fairly disclosed in this case.[13]

To the extent Civix offers Kraft's testimony as opinion testimony, Civix failed to properly disclose Kraft pursuant to Rule 26(a)(2). As Expedia points out, the Advisory Committee note to Federal Rule of Evidence 701 provides:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702... By channeling testimony that is

---

[12]Civix filed this case on June 3, 2003, well over two years ago, and the parties completed extensive discovery on infringement issues on September 30, 2004. Expert discovery and summary judgment briefing are complete.

[13]The Federal Circuit implicitly rejected the proposition set forth by Expedia that in order to "use" a claimed system it must directly use each element of the claim. In explaining that system claims require different analysis than method claims, the Federal Circuit stated that whereas "the use of a process necessarily involves doing or performing each of the steps recited," with the use of a system, the "components are used collectively, not individually." *NTP,* 2005 WL 1806123, *29.

> actually expert testimony to Rule 702, the amendment also ensures that a party
> will not evade the expert witness disclosure requirements set forth in Fed. R. Civ.
> P. 26... by simply calling an expert witness in the guise of a layperson.

Fed. R. Evid. 701, advisory committee's note (citations omitted). Indeed, portions of the Kraft

Declaration offer plain opinion testimony under Rule 702. In Paragraph 8, for example, Kraft

opines that "it clearly would not be possible for Expedia to operate these services without the use

of a personal computer or other device connected to communications links, including the

Internet." (R. 358-1; Ex. 4, ¶ 8.) Kraft also opines that various elements of the asserted claims

are satisfied by Expedia's accused web site, (*id.* ¶ 11), and "the Expedia website controls what I

can gain access to and the format and type of information I received," (*id.* ¶ 11.) This testimony

goes beyond Kraft's personal observations from operating the Expedia website. Rather, Kraft

bases this testimony on scientific, technical, or other specialized knowledge and therefore this

testimony is opinion testimony under Rule of Evidence 702. The Kraft Declaration is untimely.

As with Kraft's fact testimony, and for the same reasons, Civix's delay is inexcusable.

Further, at this late stage in the case, Civix's delay in providing the Kraft Declaration

unfairly prejudices Expedia. Expedia did not have time to depose Kraft to address his testimony

in the context of summary judgment briefing. Accordingly, the Court strikes the Kraft

Declaration.[14]

---

[14]Countering Expedia's motion to strike, Civix filed its own motion to strike Expedia's declarations of Coldham, Widjaja, Eastburn, and Covill. The Court denies Civix's motion to strike. Expedia has disclosed each of these witnesses in its Rule 26(a)(1) disclosures or supplements thereto. Civix has failed to demonstrate that the disclosure of these witnesses was untimely. Because Expedia disclosed these witnesses to Civix in its Rule 26(a)(1) disclosures, Civix was aware of them and had an opportunity to seek their depositions. Indeed, the Court already rejected Civix's argument that it was unable to take depositions related to Expedia's prior art disclosures. (R. 335-1; Transcript of Hearing of May 2, 2005 at 6-7.) Civix argues that Expedia's disclosure of Eastburn and Covill came after Civix's alleged disclosure of Neer and

### b.    Other Evidence In The Record

Besides the Kraft Declaration, Civix also points to other evidence that it alleges shows that Expedia uses the claimed system with both its Car Wizard and Lodging Wizard. Civix relies on confidential Expedia documents that describe Expedia's car database. (R. 388-1; Pl.'s Ex. 15.) An Expedia witness testified that users on Exedia's website search Expedia's databases to search for car rental locations. (*Id.*, Ex. 13 at 23.) An Expedia witness testified that Expedia stores data about hotels. (*Id.*, Ex. 2 at 16.) The information provided on Expedia's website in response to a user's search is information stored on Expedia's databases. (*Id.*, Ex. 2 at 70.) Civix further points to advertising by Expedia that shows the use of Expedia's website featuring Expedia returning a listing of hotels. (*Id.*, Ex. 5 at 46.) Also, Civix relies on usability studies that Expedia performed related to its design of its user interface. (PSAUF ¶ 6.) This evidence, viewed in its entirety, creates a triable issue of fact whether Expedia exercises control over its system and obtains beneficial use from its system, such that it "uses" the system under § 271(a).[15] These same genuine issues of fact also defeat Expedia's argument that it does not use

---

Rehfeld (discussed later in this Opinion). Civix did not disclose the identities of Neer and Rehfeld, however, in the form of a Rule 26(a)(1) disclosure. A witness mentioned Neer's name during a deposition and Expedia identified Rehfeld's former company in its initial disclosures. These vague identifications of Neer and Rehfeld's former company do not equate to formal disclosures that Civix may rely on the testimony of Neer and Rehfeld. The law does not require the Court to treat the Neer and Rehfeld declarations the same as it treats the Eastburn and Covill declarations.

[15]In the words of its expert, Civix's infringement theory is that an end user's operation of the Expedia website to access information "is with the [] collaboration of Expedia which, without the port, is a useless system. So Expedia is using the port to have the user enter input and give input to the user." (R. 388-1; Pl.'s Ex. 23 at 87.) Under the Federal Circuit's analysis, if Civix controls the use of its system and obtains beneficial use of its system, then it does in fact "use" the system under § 271(a). Sufficient facts exist to create a genuine dispute whether Civix's expert's theory is correct.

the claimed communication link.[16]

## 2. Whether Expedia Induces Infringement Of Claims 6 And 26

Civix also argues that Expedia actively induces the infringement of claims 6 and 26.

Expedia's lone argument against this theory is that because Expedia's users do not use Expedia's

internal or remote databases, the Court cannot find direct infringement by some third party. *Met-*

*Coil Sys., Corp. v. Korners Unlimited Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("Absent direct

infringement of the patent claims, there can be neither contributory infringement nor inducement

of infringement") (internal citations omitted). As discussed above, however, Expedia's

argument that in order to directly infringe a system claim, a party must directly use each

component of the system fails.[17]

### B. Claims 47 and 56 Of The '622 Patent

Claim 47 of the '622 patent states:

> 47. Remote access port for remotely accessing a selected category of items of
> interest in a selected geographic vicinity from a remote database, the database
> being of the type which stores information about a plurality of items of interest,
> the information including, for each of the items of interest, a geographical
> location and at least one associated category, the remote access port generating a
> request signal representative of a selected category and a selected geographic
> vicinity of the items of interest in response to inputs by the user, the remote
> access port having a user interface for accepting the inputs and for indicating to
> the user the position of at least one of the items of interest within the selected
> category and geographic vicinity.

(DSUF ¶ 6.) Expedia argues that Civix has failed to prove that Expedia uses the claimed remote

---

[16]Although Expedia argues that Civix has waived its arguments related to the "use" of the claimed system, Expedia has failed to prove this point.

[17]Because Expedia only argues that Expedia's users do not use Expedia's databases and therefore do not directly infringe, the Court does not reach the issue of whether Expedia does in fact use the claimed system as a whole.

access port under § 271(a).

### 1. Whether Expedia Directly Infringes Claims 47 and 56

Unlike claims 6 and 26 of the '622 patent, which were system claims, claims 47 and 56 are product claims, directed at a "remote access port." As discussed above, the Federal Circuit has recently addressed the meaning of "use" under the Patent Act. The court recognized that courts interpret "use" broadly and that the Supreme Court has stated that "use" "embraces within its meaning the right to put into service any given invention." *NTP,* 2005 WL 1806123, *28 (quoting *Bauer & Cie,* 229 U.S. 1). The Federal Circuit also cited the dictionary definition of "use" as to "put into action or service." *Webster's Third New International Dictionary* 2523 (1993). Here, genuine issues of fact exist whether Expedia "puts into service" the claimed remote access port. (R. 388-1; Pl.'s Ex. 2 at 16, 70; Ex. 5 at 46; Ex. 13 at 23; Ex. 15; PSAUF ¶ 6.) While Expedia does not own, or directly operate, the computer terminals that its customers use to access and use the Expedia website, Civix points to sufficient evidence showing that Expedia provides its website to those computer terminals, and, upon doing so, "puts into service" the claimed port.

### 2. Whether Expedia Indirectly Infringes Claims 47 and 56

Civix also argues that Expedia actively induces the infringement of claims 47 and 56. Expedia first argues that Civix did not disclose this theory during expert discovery and therefore waived this argument. Expedia does not argue, however, that Civix never set forth its indirect infringement theory during fact discovery. Although Civix may not rely on expert testimony in support of this theory, it may still advance this theory at trial without such testimony. Absent Expedia demonstrating that Civix failed to disclose this theory during fact discovery, the Court

23

cannot find that Civix is improperly arguing indirect infringement at this stage.

Next, Expedia contends that Expedia's users do not use Expedia's internal databases and therefore the Court cannot find that they directly infringe. *See Met-Coil Sys.*, 803 F.2d at 687. The plain language of claim 47 does not require that the user of the port also use the internal database. Rather, claim 47 merely requires that the claimed port be used for the purpose of "remotely accessing a selected category of items of interest in a selected geographic vicinity from a remote database." Accordingly, even if Expedia's users do not use its databases, this fact alone does not prevent the jury from finding that Expedia's user directly infringes claim 47.

## C.    Claims 1, 6, Or 22 Of The '307 Patent

Claim 1 of the '307 Patent states:

> 1. A method for locating items of interest relative to a first location, comprising the steps of:
> selecting the first location at a port situated at a second location;
> selecting, at the port, a category associated with the items of interest;
> communicating the first location and the category to a database that is connected to the port and that is not located at the second location; and
> receiving, at the port, information defining geographic locations of the items of interest, the information deriving from spatial detail within the database.

(DSUF ¶ 6.) Claims 6 and 22 depend from claim 1 and therefore contain each of the limitations of claim 1. 35 U.S.C. § 112, ¶ 4. Expedia argues that it does not indirectly infringe claims 1, 6 and 22 because Civix has failed to prove that any third-party users have carried out the step of "communicating the first location and category to a database." Specifically, Expedia contends that when third-party users transmit a request to the Expedia website, a web server receives the request, not a database. The web server, then, and not the third-party user, communicates with Expedia's internal database.

Civix correctly points out that when a claim uses the term "comprising," the inclusion of

additional steps to the claimed process does not negate infringement. *Dow Chem. Co. v. Sumitono Chem. Co.*, 257 F.3d 1364, 1380 (Fed. Cir. 2001) (noting the "well-established principle that the mere addition of elements in the accused product or process cannot negate infringement") (internal quotations omitted).[18] During the *Markman* process, the parties agreed that the term "communicating" means "transmitting or otherwise conveying." (R. 330-1; Def.'s Ex. 14.) As Civix points out, the plain language of the claims does not limit the claimed process to directly communicating. Therefore, under the agreed construction of "communicating," the mere fact that Expedia's website first transmits to a web server, and then to a database, does not avoid infringement as a matter of law. Accordingly, the Court denies Expedia's motion for summary judgment on claims 1, 6, and 22 of the '307 patent.

### D.     Claims 1, 5, Or 7 Of The '291 Patent

Claim 1 of the '291 patent states:

1.  A system for determining the position of one or more items of interest in a selected category, comprising:
       a database for storing information about the items of interest, the information including, for each of the items of interest, at least one associated category and spatial detail defining a geographic position; and
       a plurality of ports for accessing the database through the Internet, each port having a user interface for accepting inputs by a user of the system and for indicating to the user the geographic position of one or more of the items of interest, the user inputs defining the category associated with items of interest.

(DSUF ¶ 6.) Claims 5 and 7 depend from claim 1 and therefore contain each of its limitations.

---

[18]Courts and secondary sources have also recognized that accomplishing a single claimed step in two steps, instead of one, does not avoid infringement. *See Balaban v. Polyfoto Corp.*, 47 F.Supp. 472, 480 (D.C. Del. 1942) ("The substitution of two steps for one to accomplish the same thing does not avoid infringement"); 69 Corpus Juris Secundum (2005) Patents § 410 ("where the substance of the invention is taken, and the process is not essentially varied, infringement is not avoided by [] by the division of a step into two operations").

35 U.S.C. § 112, ¶ 4. In contending that it does not "use" the claimed system, Expedia relies on the same arguments that it makes regarding claims 6 and 26 of the '622 patent. As discussed above, genuine issues of fact exist whether Expedia uses the claimed system such that it directly infringes claims 1, 5, and 7, and whether Expedia induces the infringement of those claims.

### E.    Claims 14, 21, Or 23 Of The '291 Patent

Claim 14 of the '291 patent states:

> 14. A method for determining the position of one or more items of interest in a selected category, comprising:
>     storing information about the items of interest in a database, the information including, for each of the items of interest, at least one associated category and spatial detail defining a geographic position; and
>     supplying information about at least one of the items of interest to one of a plurality of ports, connected to the database at least in part through the Internet, in response to inputs at the one port, wherein a user at the port may locate the one item of interest.

(DSUF ¶ 6.) Claims 21 and 23 depend from claim 14 and therefore contain each of the limitations of claim 14. 35 U.S.C. § 112, ¶ 4. Expedia contends that Civix has offered no evidence that Expedia determines "the position of one or more items of interest in a selected category" or "locate[s] the one item of interest" as claimed.

### 1.    Whether Expedia Waived Its Arguments Regarding The '291 Patent

Civix first argues that Expedia waived its two noninfringement arguments regarding the '291 patent when it failed to raise these issues during claim construction proceedings. In a footnote in its Reply, Expedia argues that it properly raises this issue now because the *Markman* proceeding determined the meaning of disputed claim terms, whereas now, the Court must

determine whether or not the preamble[19] or "wherein" clause embrace the accused product. Expedia misstates the circumstances. It is not simply asking the Court to analyze whether the preamble and "wherein" clause cover the accused product. Instead, Expedia is asking the Court to decide the limiting effect of those clauses – an issue that is plainly one of claim construction that one or both of the parties should have raised during the *Markman* process.

Civix, however, fails to prove that Expedia waived its argument on these issues. Notably, Civix does not contend that Expedia has not previously asserted that it did not meet either of the limitations at issue. Assuming Civix had notice of these noninfringement arguments, Civix does not explain why the burden was Expedia's, alone, to raise the construction of these disputed claim terms in the *Markman* process. In other words, if Civix had notice that Expedia was contending that it did not satisfy these limitations, then Civix should have proposed its construction of these claims covering the accused methods, just as Expedia should have proposed its own construction. Accordingly, the Court cannot find, on the record before it, that Expedia has waived these arguments.

### 2. Whether Expedia "determin[es] the position of one ore more items of interest in a selected category"

The issue before the Court is whether the preamble of claim 14 of the '291 patent limits that claim, and if it does, what effect does that have on the claimed method. A claim preamble is limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808

---

[19]"The preamble is that portion of the claim preceding the word "comprising." *Boerhringer Ingelheim Animal Health, Inc. v. Schering-Plough Corp.*, 984 F.Supp. 239 (D.N.J. 1997) (citing *Judin v. United States*, 27 Fed.Cl. 759, 775 (Fed. Cl. 1993)).

(Fed. Cir. 2002). Conversely, the Federal Circuit has explained:

> If [] the body of the claim fully and intrinsically sets forth the complete invention, including all of its limitations, and the preamble offers no distinct definition of any of the claimed invention's limitations, but rather merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation.

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305 (Fed. Cir. 1999). Although the claim body relies on the preamble for the antecedent basis of the term "the items of interest," that alone is not dispositive on the limiting effect of the preamble. The Federal Circuit has found a statement of intended use in a preamble to be non-limiting, even where the body of the claim relied on the preamble for antecedent basis. *See Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368 (Fed.Cir. 2001) (holding that the preamble "[a] method for treating a patient suffering from a taxol-sensitive tumor comprising []" did not limit the claim even though the body of the claim relied on the term "a patient" for antecedent basis).[20] Rather, the Federal Circuit has recognized that there is no litmus test for determining the limiting effect of a preamble, *see Pitney Bowes,* 182 F.3d at 1305 (no "litmus test" exists for determining the effect of a preamble), and the Court must decide the issue on a case by case basis, looking to the claim as a whole, the specification, and the prosecution history. *Applied Mat'ls, Inc. v. Advanced Semiconductor Mat'ls Am., Inc.,* 98 F.3d 1563, 1572-73 (Fed. Cir. 1996) ("Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is

---

[20]Further, as Civix points out, other district courts have recognized that the mere fact that the body of the claim relies on the preamble for antecedent basis does not, by itself, render the preamble limiting. *See Globespanvirata, Inc. v. Texas Instrument, Inc.,* 2005 WL 984346, *8-9 (D.N.J. April 7, 2005); *ICN Pharms., Inc. v. Geneva Pharms. Tech. Corp.,* 272 F.Supp.2d 1028, 1045 (C.D. Cal. 2003).

determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history"). Here, neither party fully addresses whether the specification and prosecution history support treating the preamble as limiting, and to what extent.[21] The parties have not sufficiently developed these issues in their briefing in order for the Court to make a decision on this issue of law.[22] The parties may submit additional briefing on the limiting effect of the preamble and "wherein" clause of claim 14 of the '291 patent by September 15, 2005.

Even if the preamble were limiting, as Expedia contends, genuine issues of fact would still exist whether Exedia satisfies this limitation. Given the fact that Expedia concedes, at least for purposes of this motion, that it performs the steps of storing, and supplying information, triable issues of fact exist whether Expedia, itself, is the entity that "determin[es] the position of one or more items of interest in a selected category."[23]

### 3. Whether Expedia "locate[s] the one item of interest"

Expedia asserts that the clause "wherein a user at the port may locate the one item of interest" is limiting and Expedia does not satisfy that limitation because Expedia, itself, does not use a port to locate the one item of interest. As with the preamble, even if the "wherein" clause

---

[21]The Court requests additional briefing on the issue of the limiting effect of the preamble and "wherein" clause of claim 14 of the '291 patent. Each party may submit briefing

[22]Much of the legal argument on this issue occurs in Expedia's Response to Civix's Statement of Additional Undisputed Facts, which is improper under Local Rule 56.1.

[23]As discussed in Section III.A. of this Analysis, questions of fact exist regarding Expedia's "use" of the claimed invention. The Court recognizes that the Federal Circuit in *NTP, Inc.*, 418 F.3d 1282, 2005 WL 1806123, *25-29, recognized a distinction between using a system and using a method. Because the parties have not addressed the Federal Circuit's decision in *NTP* in their briefing, the Court does not reach this issue.

is limiting as Expedia contends, genuine issues of fact exist whether Expedia meets that

limitation.[24] Accordingly, the Court denies Expedia's motion for summary judgment of

noninfringement of claims 14, 21, and 23 of the '291 patent.

### F.   The Go2 Patents

Claim 27 of the '692 patent provides:

> 27. A locational information system capable of being used to provide a location,
> said locational information system comprising:
>> a repository capable of receiving and storing said location;
>> a receiver capable of receiving a request including a locational address,
>> wherein a search of said repository acquires said location; and
>> a transmitter capable of transmitting said location to a user;
>> wherein said locational address is defined based on a latituede/longitude.

(DSUF ¶ 6.) Claim 28 depends on claim 27 and therefore contains each of its limitations. 35

U.S.C. § 112, ¶ 4. Claim 41 provides:

> 41. A method of providing a location, said method comprising:
> storing said location in a repository;
>> receiving a request including a locational address;
>> searching said repository based on said locational address;
>> acquiring said location; and
>> transmitting said location to a user;
>> wherein said locational address is defined based on a latitude/longitude.

(DSUF ¶ 6.) Claim 42 depends from claim 41 and contains each of its limitations. 35 U.S.C. §

112, ¶ 4.

The parties agreed that the term "request" means "a communication indicating the desire

to obtain information," and the term "locational address" means "either a ULA (Universal

---

[24]The Court also notes that even if the "wherein" clause is limiting, the Court notes that
the plain language of the wherein clause – "wherein a user at the port may locate the one item of
interest" – is permissive, and therefore indicates that the claimed method must merely provide
the capability for a user at a port to locate the one item of interest.

Locational Address) or a PLA (Proprietary Locational Address)." The parties disputed the construction of "PLA" and the Court construed "PLA" to mean "proprietary locational address, which is a name, which will be unique within the district, that distinctly identifies a location with (sic) the district. A proprietary address is created by selecting a name, capturing positional information about the location associated with the name, checking that the name is unique in the district and storing the name with its associated locational information and feature data. Once stored, the name and the associated information may be selectively disseminated to users of locational systems."

Expedia first argues that Civix has failed to show that Expedia receives PLAs. Next, Expedia argues that even if the evidence reflected that Expedia selected, checked, and received PLAs, Civix has failed to show that Expedia's Hotel and Car Wizards transmit PLA locations to users. Expedia also argues that if Civix were able to show that Expedia did infringe claims 27, 28, 41, and 42, Civix would also have shown that the claims were invalid for anticipation. The Court address these arguments in turn.

### 1. Expedia's Motion to Strike The Gehani Declaration

Before turning to the parties' arguments, the Court first addresses Expedia's motion to strike the declaration of Narain Gehani that Civix provided in opposition to Expedia's motion for summary judgment (the "Gehani Declaration"). Expedia contends that the Gehani Declaration offers expert testimony that was not disclosed according to Rule 26(a)(2) or the Court's order. Civix counters by arguing that the Gehani Declaration relates to validity issues and merely addresses deposition questions asked by Expedia's counsel that improperly related to validity, rather than infringement, issues. Therefore, Civix argues that Expedia "opened the door" to this

31

declaration by asking Gehani questions related to validity. Civix's argument does not address the entire Gehani Declaration. Only paragraphs 27 and 27 address validity issues. The Gehani Declaration primarily addresses the functionality of Expedia's website, and therefore squarely confronts infringement issues. Accordingly, paragraphs 5-26 provide untimely expert testimony and the Court strikes those paragraphs. Civix has the burden of proving infringement and has offered no excuse for providing this untimely expert testimony relating to infringement issues. Further, Expedia would be unfairly prejudiced by this testimony because it did not have an opportunity to provide rebuttal expert testimony.

Paragraphs 26 and 27 of the Gehani Declaration address the issue of validity. Gehani expressly stated at his deposition that he required more time to review the '622 patent in light of Expedia's questions before he could answer those questions. Although Gehani ultimately did offer answers to those questions, his express statements that he needed additional time to respond reserved his right to provide further testimony on those questions at a later time. Accordingly, the Court denies Expedia's motion to strike paragraphs 26 and 27 of the Gehani Declaration.

### 2. Whether Expedia Receives PLAs

Expedia contends that it does receive PLAs as required by the claims of the Go2 patents because Civix has failed to show that any locations that Expedia receives are formed according to the process required by the Court's claim construction of "PLA." Specifically, Expedia argues that Expedia does not: (1) select or choose from among names; (2) capture positional information about selected names; (3) check names to be used to ensure that they are unique within a given district or geographical area; (4) store selected names with associated locational

32

information and feature data; or (5) selectively disseminate names together with associated information to users. In particular, Expedia contends that Civix's expert does not address whether these claim construction requirements are present in the accused system and method. Even if Expedia is correct that Civix's expert ignored these requirements, Civix may still present evidence to demonstrate that a triable issue of fact exists whether Expedia receives PLAs.[25]

### a.    Selecting A Name

Expedia's expert concedes that there are multiple possibilities for identifying a location that Expedia receives from a user.[26]  (PSAUF ¶ 25.)  In the light most favorable to Civix, this creates an issue of fact whether Expedia receives a PLA that is created using the step of selecting a name.

### b.    Capturing Positional Information About the Location Associated With The Name

Expedia's own expert further indicated that Microsoft performs geo-coding under contract for Expedia.[27]  (PSAUF ¶ 25.)  Also, Civix identifies evidence that Expedia employees create and input coordinate data describing the geometric boundaries of the locations stored in Expedia's databases.  (PSAUF ¶ 27.)  This creates a triable issue of fact whether Expedia receives a PLA that is created using the step of capturing positional information about the

---

[25]Whether or not Civix's expert did address these requirements in his report is an issue that Expedia can raise in a motion in limine.

[26]Civix also points out that the specification of the '692 patent plainly anticipates that an entity other than Expedia may select the name for the PLA. (PSAUF ¶ 27.) Indeed, the plain language of the Court's construction of PLA also does not require that Expedia be the entity that "selects."

[27]Expedia does not argue, and the Court does not address, whether Expedia avoids this limitation if an entity other than Expedia is the one that captures positional information.

location associated with the name.

### c. Checking That The Name Is Unique Within The District

Civix relies on a declaration from Lee Hancock, one of the named inventors on one of the Go2 patents at issue (the "Hancock Declaration").[28] Mr. Hancock used Expedia's website, performing a search for hotels in the vicinity of "park." (Hancock Decl. ¶ 11.) Mr. Hancock provided the results of that search (*Id.*, Ex. C) and testified that "[t]here were no duplicates in the list of attractions Expedia returned in response to [his] second search." (*Id.* ¶ 16.) Viewing this evidence in the light most favorable to Civix, this evidence creates a genuine issue of fact whether Expedia's system receives a PLA that is created using the step of "checking that the name is unique within the district."

### d. Storing The Name With Its Associated Locational Information And Feature Data

Expedia contends that it does not "store selected names with associated locational information and feature data." (DSUF ¶ 22; Widajaja Decl. ¶ 6; Coldham Decl. ¶6.) The Court's construction of the term "PLA," however, merely requires that one create the PLA using the step of "storing the name with its associated locational information and feature data." In other words, in arguing that it does not meet this requirement, Expedia inserts the word "selected" into its assertions. Other than the above conclusory assertions, Expedia does not

---

[28]Expedia moves to strike the Hancock Declaration, arguing that it provides expert testimony that Civix did not properly disclose pursuant to Rule 26(a)(2). The Court agrees with Expedia, for the reasons discussed with regard to the Kraft Declaration, that to the extent the Hancock Declaration offers expert testimony, the Court strikes that testimony. Portions of the Hancock Declaration contain pure fact testimony, and the Court does not strike those portions. For instance, the first sentence of paragraph 16 of the Hancock Declaration, relates to Hancock's first hand knowledge from using Expedia's website. This is fact testimony, that the Court relies on as discussed above.

further develop this argument and therefore the Court cannot determine whether Expedia is arguing that it does not store any names, or whether Expedia is merely re-stating its contention that it does not "select" the names. For the reasons discussed above in Section II.F.2.a., genuine issues of fact exist whether one creates the PLAs by "selecting a name." Accordingly, the Court cannot find as a matter of law that this requirement is not present in the accused system and method.[29]

### e. Selectively Disseminating To Users

The Court's construction of "PLA" does not require Expedia to actually "selectively disseminate[]" the associated information to users." Rather, the construction states that the associated information "*may* be selectively disseminated to users." Expedia has not argued that its system is incapable of selectively disseminating the associated information to users, and the Court cannot find as a matter of law that Civix cannot prove that the accused systems meets this claim requirement.

### 3. Whether Expedia's Hotel And Car Wizards Transmit PLA Locations To Users

Civix points out that Expedia confuses the terms "locational address" and "location." Although Expedia contends that it does not transmit a PLA to its users, the claims only require that the system transmit a "location" to the user.[30] The inventor used both the term "locational

---

[29]To the extent Expedia contends that it does not satisfy the step of "storing the name with its associated location information and feature data," Expedia fails to either plainly state, let alone develop, this argument and therefore fails to make its prima facie case for summary judgment. *FTC v. World Media Brokers,* 415 F.3d 758, 766 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.") (internal citations omitted).

[30]The parties never asked for the Court to construe the term "location." Because the Court cannot determine which party had a burden to raise this issue to the Court during the

address" and "location" in the Go2 claims, and therefore the Court presumes that they have different meanings. *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. K.G.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings"). Further, claim 45 adds the limitation "wherein said location is an area" and claim 47 (depending from claim 45) adds the limitation "wherein said area is based on a PLA." Because a "location" can be "based on a [type of locational address]," a "location" must have a different scope than a "locational address." Accordingly, the Court cannot decide as a matter of law that Expedia does not infringe the Go2 claims merely based on the fact that Expedia does not transmit the location of a PLA to the user.

### 4. Whether Claims 27, 28, 41, And 42 Must Be Invalid In Order For Expedia To Infringe Them

Expedia asserts that even if it did infringe claims 27, 28, 41, and 42 of the '692 patent, those claims would necessarily be invalid for anticipation in light of the prior art '622 patent. Expedia relies on the admissions of Civix's expert, Gehani, from his deposition. As discussed above, Civix submits paragraphs 26-27 of the Gehani Declaration where Gehani explains his alleged deposition admissions. Declarations that contradict earlier deposition testimony are typically insufficient to create genuine issues of fact. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001) ("where a deposition and affidavit are in conflict, the affidavit is to be regarded unless it is demonstrable that the statement in the deposition was mistaken"). As discussed above, under the specific facts here, Gehani expressly reserved the right to provide

---

*Markman* proceedings, the Court cannot determine at this point which party waived its argument regarding the construction of this term.

further testimony on the validity of the '692 claims in light of the '622 patent. To the extent Gehani provided answers at his deposition that are now contradicted by his deposition, Expedia can raise those issues in its cross examination of Gehani. Nonetheless, Gehani's declaration creates triable issues of fact regarding whether the '622 patent anticipates the asserted claims of the '692 patent.[31]

## IV. Invalidity Under 35 U.S.C. §§ 102 And 103

Expedia contends that claims 6, 47, and 57 of the '622 patent, claims 1, 6, and 22 of the '307 patent, and claims 1, 5, 7, 14, and 21 of the '291 patent are invalid as "anticipated" under 35 U.S.C. § 102. In order for a prior art reference to anticipate a patent claim, a single prior art reference must disclose each and every limitation of the claim. *Eolas Techs. Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1335 (Fed. Cir. 2005). Expedia also contends that claim 26 of the '622 patent and claim 23 of the '291 patent are invalid as obvious under 35 U.S.C. § 103. Under section 103, an accused infringer may demonstrate that a claimed invention would have been obvious to a person of ordinary skill in the art at the time of the invention. *See Akamai Techs., Inc. v. Cable Wireless Internet Servs., Inc.,* 344 F.3d 1186, 1195 (Fed. Cir. 2003).

A court must presume that a patent claim is valid, 35 U.S.C. § 282, and therefore an accused infringer must prove that a claim is invalid by clear and convincing evidence. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344, 1356 (Fed. Cir. 2001).

---

[31]The Court grants Expedia leave to depose Gehani solely on his declaration as it relates to the validity of claims 27, 28, 41, and 42 of the '692 patent. The deposition must take place on or before October 6, 2005.

## A.     "CompuServe" As Prior Art

### 1.     The Identity Of "CompuServe"

Civix argues that Expedia has failed to prove that a single prior art system contained each of the limitations of the claims that Expedia contends it anticipates. Civix first points out that Expedia nowhere defines what "the CompuServe information service, together with the EAAsy Sabre database" may have been at any given point in time. Specifically, Civix points to Trevor's testimony that "there were two EAAsy Sabre services. There was the ASCII version and what [Trevor called] the CIM version." (PSAUF ¶ 33.) Further, Expedia's expert did not distinguish between the two versions, nor did Expedia distinguish between the two versions in its briefs. Expedia argues that because the asserted claims are written in such broad language, it is irrelevant whether it is referring to the ASCII version or the CIM version of the prior art reference. Expedia, however, fails to point to any evidence to confirm that the difference between these two versions does not impact whether the prior art reference contained each and every element of the asserted claims. In light of Expedia's burden of proving invalidity by clear and convincing evidence, *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.,* 392 F.3d 1317, 1320 (Fed. Cir. 2004), triable issues of fact exist regarding the specific identity of a single CompuServe/EAAsy Sabre system that was publicly known or used prior to the critical date and incorporated each and every limitation of the asserted claims. In other words, even assuming that Expedia points to evidence of each claim limitation being disclosed in a CompuServe network and EAAsy Sabre systems and that a CompuServe network and EAAsy Sabre system were publicly used prior to the critical date, Expedia has not pointed to the piece of evidence that clearly and convincingly confirms that a single system, publicly known or used prior to the

38

critical date in fact incorporated each and every limitation.[32]

## 2. Public Use

Civix next argues that Expedia has not proven that the "CompuServe" system was in fact publicly used prior to the critical date. "Public use" under 35 U.S.C. § 102(b) means "any use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *See Minnesota Min. & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1301 (Fed. Cir. 2002) (citing *Netscape Comm. Corp. v. Konrad,* 295 F.3d 1315, 1321 (Fed. Cir. 2002)). Anticipation by "public use" requires "actual use by someone at some point. *Chemque, Inc.,* 303 F.3d 1294, 1307. Invalidity based on a § 102(b) public use is a question of law based on underlying questions of fact. *Id.* at 1301.

Civix contends that Expedia does not point to any actual uses of their alleged "CompuServe" prior art system. In response, Expedia does not point to any evidence of actual uses, but instead argues that § 102 requires only that prior art be "publicly available" in order to be a public use. Expedia is wrong. The Federal Circuit addressed this issue in *Chemque, Inc.,* overturning a jury finding of invalidity because there was no direct evidence of the use of the prior art and therefore no substantial evidence of the product's use to support the jury finding. *Chemque, Inc.,* 303 F.3d at 1306-7. Evidence that samples of the prior art mixture were sent to various corporations did not constitute evidence of "use" under § 102. *Id.* at 1307. Accordingly, under Federal Circuit law, Expedia's argument that the alleged "CompuServe/EAAsy Sabre"

---

[32]The Court recognizes that the commonality of the names "CompuServe" and "EAAsy Sabre" between the various pieces of evidence and testimony tend to infer that a single system did in fact exist. In light of Civix's evidence that different versions of these systems existed, the lack of evidence confirming that any such differences were immaterial, and Expedia's clear and convincing burden, triable issues of fact exist.

system was publicly used merely because it was publicly available fails.

### 3. Public Knowledge

Expedia further argues that although Civix contests whether the "CompuServe/EAAsy Sabre" system was publicly used, it does not contest that it was publicly known, and therefore prior art under § 102(a). In order to constitute prior art under § 102(a) as being "publicly known," the "knowledge" must have been accessible to the public. *Woodland Trust v. Flowertree Nursery, Inc.,* 147 F.3d 1368, 1370 (Fed. Cir. 1998). Also, the "disclosure must be sufficient to enable one with ordinary skill in the art to practice the invention." *Chemque, Inc.,* 303 F.3d at 1306 (citing *In re Borst,* 345 F.2d 851, 855 (CCPA 1965). Although Expedia argues that there is "no legitimate question that [] CompuServe/EAAsy [was] publicly available before Civix's supposed invention date of the Civix patents in May, 1994," Expedia does not specifically point to any evidence that any disclosure of the alleged "CompuServe/EAAsy" system was sufficient to enable one of skill in the art to practice the invention. The Court recognizes that Expedia points to evidence that various aspects of the alleged "CompuServe/EAAsy" system were available for use. As discussed above, however, Expedia fails to prove that there is not a genuine dispute that it can clearly and convincingly demonstrate a single system that was publicly known, with each of the claimed limitations. Accordingly, the Court cannot infer that any disclosure enabled a person of skill in the art to practice the claimed invention, and therefore cannot rule as a matter of law that the alleged "CompuServe/EAAsy Sabre" system was publicly known.

### 4. Printed Publication

Expedia also asserts that various publications constitute prior art under § 102(b). In order

40

for a document to anticipate a claim as a printed publication, the four corners of that single prior art document must "describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *See Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). Here, Expedia does not explain how any of its alleged prior art publications disclose each and every element of the asserted claims. To the extent Expedia develops its legal anticipation arguments only in its Rule 56.1 statement or responses, Expedia violates Rule 56.1. *See Wachovia Bank, N.A. v. Foster Bancshares, Inc.*, No. 04 C 3914, 2005 WL 1910903, *2 (N.D. Ill. Aug. 9, 2005) (quoting *Malec*, 191 F.R.D. at 585 ("The purpose of the 56.1 statement is to identify for the court the evidence supporting a party's factual assertions in an organized manner... it is not intended as a forum for factual or legal argument")). Further, Expedia's assertions of anticipation based on printed publications in its Local Rule 56.1 statement are not properly developed. The Court recognizes that Expedia provides charts that cite to publications as evidence of a particular claim limitation being present in the alleged "CompuServe/EAAsy Sabre" system. (*See e.g.*, DSUF ¶ 51.) Expedia does not sufficiently identify where in the alleged prior art publications each claim limitation is disclosed, especially in light of its clear and convincing burden for invalidity.[33] Accordingly, the Court cannot find as a matter of law that any single document disclosed each and every limitation of any asserted

---

[33]In its Response Brief, Civix moves to have the Court disregard portions of Expedia's statement of facts referring to pages of detailed technical documents without discussion of what specific statements from the documents Expedia relies on. The Court grants Civix's motion. As Civix points out, it is not the duty of the Court to search the record for facts on behalf of a party, *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 547 n. 10 (7th Cir. 2002), and Expedia must sufficiently develop its arguments in order for the Court to consider them. *World Media Brokers*, 415 F.3d at 766.

claim.

### 5.    Whether Any CompuServe Reference Would Anticipate Any Asserted Claims

Because triable issues of fact exist regarding the identity of the alleged

"CompuServe/EAAsy Sabre" system, the Court does not reach the issue of whether any such

prior art system discloses various elements of the asserted claims.  The Court recognizes that

Expedia requests that the Court make findings pursuant to Rule 56(d).  Because the Court finds

that triable issues of fact exist whether a single prior art system that was publicly known or used

and incorporated each limitation of an asserted claim, it would beg the question for the Court to

make findings whether various aspects of some system satisfied the asserted claim elements.

Accordingly, the Court denies Expedias motion for summary judgment that claims 6, 47,

and 56 of the '622 patent, claims 1, 6, and 22 of the '307 patent , claims 1, 5, 7, 14, and 21 of the

'291 patent are anticipated by the "CompuServe" reference.

### B.    The "Sabre" Prior Art Reference

For the same reasons discussed above regarding the alleged "CompuServe/EAAsy Sabre"

prior art, the Court cannot grant summary judgment of invalidity based on the alleged "Sabre"

prior art.  In particular, as with the "CompuServe/EAAsy Sabre" prior art, Expedia fails to show

there is no genuine dispute that it can clearly and convincingly show that there was a single

system that was publicly used or known that disclosed each of the limitations of the claims at

issue.  Civix points to evidence that there were multiple versions and aspects of the alleged

"Sabre" system  may not have been used as one single system.  (PSAUF ¶ 37.)  It is not clear

from the record before the Court that each witness or other piece of evidence related to "Sabre"

is referring to the same system, such that a single prior art system exists disclosing each and

every claim limitation of any asserted claim.

## C. Obviousness

Expedia contends that claim 22 of the '622 patent and claim 23 of the '291 patent are invalid as obvious under 35 U.S.C. § 103. Because triable issues of fact exist regarding the identity and exact nature of the alleged "CompServe/EAAsy Sabre" and "Sabre" systems, genuine issues of fact also exist regarding obviousness. The Court denies summary judgment on this issue.[34]

## V. Whether Civix Can Prove It Is Entitled To Pre-Filing Damages

Expedia contends that because Civix did not provide proper pre-filing notice to Expedia, Civix is precluded from obtaining any damages pre-dating the filing of this lawsuit. Regarding the '307 patent, Expedia asserts that Civix only charges Expedia with inducing infringement of that patent, and Expedia could not have induced any such infringement because it did not have specific knowledge of that patent prior to the filing of this lawsuit.[35] Regarding the '622, '291,

---

[34]In support of its opposition to Expedia's motion for summary judgment on obviousness, Civix relies on the declaration of John E. Rehfeld (the "Rehfeld Declaration"). As with Kraft, discussed above, Civix did not disclose Rehfeld in its Rule 26(a)(1) initial disclosures or in any expert disclosures pursuant to Rule 26(a)(2). Accordingly, whether or not Rehfeld's testimony is fact testimony or expert testimony, the Rehfeld Declaration is untimely. Although Civix argues that Expedia had notice of Rehfeld's former position with Etak, Inc., a company relevant to the issues in this case, Expedia was entitled to rely on the fact that Civix did not disclose Rehfeld as either a fact or expert witness and therefore was not relying on his testimony at trial. Further, Civix's argument about it not knowing the exact nature of Expedia's obviousness contentions fails. If Civix was unsatisfied with the specificity of Expedia's interrogatory answers, it should have sought an order from the Court compelling Expedia to sufficiently provide such contentions. Given the late nature of this case, Expedia would be unfairly prejudiced by Civix's reliance on the Rehfeld Declaration and the Court grants Expedia's motion to strike it.

[35]Expedia does not contend that 35 U.S.C. § 287(a) applies to the '307 patent. Section 287(a) only applies if a patentee, or a licensee of the patentee, makes, offers for sale, or sells an

43

and '692 patents, Expedia argues that Civix has failed to comply with 35 U.S.C. § 287(a).

## A. The '307 Patent

Civix charges Expedia with inducing infringement of the '307 patent. Section 271(b) of the Patent Act expressly provides a remedy against "actively and knowingly aiding and abetting another's direct infringement." *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1194-96 (Fed. Cir. 1996) (quoting *Water Techs., Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1998)). The Federal Circuit has held that a "crucial element of induced infringement is that the inducer must have actual or constructive knowledge of the patent." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 161 F.3d 688, 695 (Fed. Cir. 1998)[36]. Expedia argues that because it never had notice of the '307 patent until the filing of this lawsuit, Civix cannot collect any damages for Expedia's alleged induced infringement of that patent prior to this suit. In response, Civix points to the fact that Expedia was a successor to Microsoft's Expedia business unit and argues that Microsoft had actual knowledge of Civix's patented technology as early as April 1998. Civix's argument fails. Civix relies on an April 1998 letter from its counsel to Microsoft's counsel, notifying Microsoft of certain Civix patents, other than the patents asserted in this case. This letter does not identify the patents in suit. In fact, the patents in suit, including the '307 patent, did not issue until years after Civix sent the April 1998 letter to Microsoft. Regardless of whether or not Microsoft's knowledge constituted knowledge on the part of

---

article covered by the patent. 35 U.S.C. § 287(a).

[36]*Also see Cybiotronics, Ltd. v. Golden Source Elec., Ltd.,* 130 F.Supp.2d 1152, 1165 (C.D. Cal. 2001) (holding that a "finding of actual *Black & Decker (US) Inc. v. Catalina Lighting, Inc.,* 953 F.Supp 134, 138 (E.D. Va. 1997) (a plaintiff must prove "an inducer's knowledge of the asserted patent" in order to prove induced infringement).

Expedia, Civix's April 1998 letter to Microsoft does not create a genuine issue of fact whether Microsoft had knowledge of the '307 patent prior to the filing of this lawsuit. Accordingly, Civix cannot collect pre-filing damages on its induced infringement theory on the '307 patent.

Civix also points out that besides its induced infringement claim, it also alleges that Expedia directly infringed the '307 patent. Civix's expert, however, does not contend that Expedia directly infringes the '307 patent, and Civix does not argue that it will contend at trial that Expedia directly infringes that patent. Accordingly, Civix is barred from seeking pre-filing damages for Expedia's alleged infringement of the '307 patent.

## B.    The '622 Patent, '291 Patent, And '692 Patent

When a patentee, or any licensee of the patentee, makes, offers for sale, or sells a patented product, Section 287(a) of the Patent Act limits the patentee's damages in an infringement suit to only those damages that accrue after the infringer has notice of the patent.[37] 35 U.S.C. § 287(a). This notice can be either constructive or actual. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). A patentee may provide constructive notice by marking the product with "the word 'patent' or the abbreviation 'pat.', together with the number of the

---

[37]Specifically, Section 287(a) of the Patent Act provides:
Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, [], may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, []. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

patent." 35 U.S.C. § 287(a). In order to provide actual notice, the patentee must provide notice

"of the infringement, not merely notice of the patent's existence or ownership." *Amsted Indus.*

*Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Although there are

"numerous possible variations" of providing actual notice, the Federal Circuit has recognized

that a patentee provides actual notice under § 287(a) when it informs the alleged infringer of "the

identity of the patent and the activity that is believed to be an infringement, accompanied by a

proposal to abate the infringement, whether by license or otherwise." *SRI Int'l, Inc. v. Advanced*

*Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997). Further, for purposes of 35 U.S.C. §

287(a), it is irrelevant whether an accused infringer knew of either the patent or its own

infringement. *Amsted*, 24 F.3d at 187 ("The correct approach to determining notice under

section 287 must focus on the action of the patentee, not the knowledge or understanding of the

infringer").

### 1.    Civix's April 1998 Letter To Microsoft

Civix contends that Expedia had actual notice of the "patented technology" as early as

April 1998 because it was a successor to Microsoft's Expedia business group. In support, Civix

relies on a letter sent from its counsel to Microsoft's counsel, alleging that certain Microsoft

products required a license under certain Civix patents. The letter did not include any of the

patents in suit. Also, Civix points to the deposition testimony of Expedia's damages expert,

stating that she considered Civix's license offer to Microsoft to include a license to the asserted

patents in this lawsuit. (PSAUF ¶ 45.) Civix's argument fails. The letter from Civix to

Microsoft did not identify any of the patents in suit. In fact, as Expedia points out, the asserted

patents in this suit had not even issued at the time that Civix sent its letter to Microsoft.

Notifying an alleged infringer of related patents is not sufficient as a matter of law to provide actual notice. *See SRI Int'l*, 127 F.3d at 1470 ("The requirement of actual notice under § 287(a) is designed to assure that the recipient knew of the adverse patent during the period in which liability accrues"); *Amsted*, 24 F.3d at 187 ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device"). Further, Expedia's expert's opinion as to whether Civix's license offer to Microsoft would have included the patents in suit is irrelevant. Whether that license would have eventually included the asserted patents, after they issued, is a different inquiry from whether the letter offering that license communicated a "specific charge of infringement" of those patents to Expedia. *See Amsted*, 24 F.3d at 187. Because the asserted patents did not exist at the time of that letter, it is impossible for that letter to communicate the specific charge of infringement required by the Federal Circuit. *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1266 (Fed. Cir. 1992) ("A patentee does not have any enforceable rights in a patent application until the patent issues"). Also, whether or not Expedia actually was aware of the patents in suit is also irrelevant under § 287(a). *See Amsted*, 24 F.3d at 187.

In support of its proposition that a letter need not identify the asserted patent in order to provide actual notice satisfying § 287(a), Civix cites *Konstant Prods. Inc. v. Frazier Indus. Co. Inc.*, No. 91 C 4491, 1992 WL 404224 (N.D.Ill. Sept. 18, 1992). The court in *Konstant*, however, plainly stated that § 287(a) "is satisfied whenever the infringer is notified of the same information which the statute requires for patent marking, which need only include the word "patent," or its abbreviation, and the patent number." *Id.* at *1226. Although the court also explained that it would "liberally construe" § 287(a), this merely referenced whether or not an

47

actual threat of litigation must accompany the notice, or whether offers of a license were sufficient. Accordingly, Civix's April 1998 letter to Microsoft does not constitute actual notice under § 287(a).

### 2. Whether The Patentees Marked The Patented Products

Civix concedes that it did not mark any of the patented products with the numbers of the '662 or '291 patents. Accordingly, Civix has failed to prove compliance with § 287(a) and is barred from collecting damages for pre-filing infringements of the '662 or '291 patents.

Regarding the '692 patent, Civix relies on the testimony of Lee Hancock, the former Chief Executive Officer of Go2, which was the original owner of the '692 patent. Mr. Hancock testified at his deposition that prior to the filing of this suit, Go2 had not licensed the '692 patent. Also, Mr. Hancock testified that Go2 had properly marked its patented system. (PSAUF ¶ 45.) This evidence creates a genuine issue of fact whether Civix has complied with § 287(a) by providing constructive notice of the '692 patent.[38]

## VI. Willfulness

Even if genuine issues of fact exist whether it infringed the patents in suit, Expedia

---

[38]Expedia also sites *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111 (Fed. Cir. 1996) for the proposition that § 287(a) requires a patentee to plead compliance with that section. The Federal Circuit has recently noted that the cited language in *Maxwell* was a "bare statement" and was dicta, and declined to strictly follow it. *See Sentry Protection Prods. v. Eagle Mfg. Co.,* 400 F.3d 910, 918 (Fed. Cir. 2005) (citing *Dunlap v. Schofield,* 152 U.S. 244, 248, 14 S.Ct. 576, 38 L.Ed. 426 (1894) (a patentee has "the duty of alleging and the burden of proving" compliance with § 287(a))). Accordingly, because Expedia has not alleged that it has been unfairly prejudiced by Civix's failure to plead its § 287(a) compliance, the Court declines to grant summary judgment on the § 287(a) issue merely based on Civix's failure to plead. *See Technology Licensing Corp. v. Thomson, Inc.,* No. Civ. S-031329, 2005 WL 1562225, *2-3 (E.D. Cal. Jun. 30, 2005) (court granted summary judgment on plaintiff's failure to comply with § 287(a) based on plaintiff's failure to plead notice because defendant's counsel represented to the court that he conducted not discovery on the issue of when notice occurred in reliance on plaintiff's failure to plead).

argues that Civix cannot meet its burden of proving that such infringement was willful. In determining whether infringement is willful, a court looks to the totality of the circumstances. *Knorr-Bremse Systeme-Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004). "Actual notice of another's patent rights triggers an affirmative duty of due care." *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (citing *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed. Cir. 1986). A patentee must prove willfulness by clear and convincing evidence. *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).

Expedia argues that it never had pre-suit actual notice of the asserted patents, and, therefore, it did not have a duty of due care until Civix filed its complaint. Since Civix filed this suit, Expedia argues that it has never believed that it infringed a valid and enforceable patent of Civix, as evidenced by its "legitimate" and "non-frivolous" defenses in this case.

Expedia is correct that Civix cannot prove that it had actual notice of the asserted patents prior to the filing of this suit. Civix points to various activities related to Civix's earlier suit against Microsoft. The patents asserted by Civix in that case, however, did not include the patents asserted here. In fact, the asserted patents had not issued at the time of the events in the Microsoft suit cited by Civix. Civix does not cite any case where a court found that an alleged infringer's knowledge of one patent constituted knowledge of a related patent.

Next, Civix points to the fact that the United States Patent & Trademark Office ("PTO") published the application for the '622 patent on September 13, 2001. Civix argues that this triggered Expedia's duty of due care. As with its argument regarding the Microsoft litigation, Civix does not cite to any case finding that the publication of a patent application by the PTO

49

triggered an alleged infringer's duty of due care. In fact, Federal Circuit law is clear that "actual knowledge," not "constructive knowledge" is required to trigger an alleged infringer's duty of due care. *See Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998)). Further, the Federal Circuit has also recognized that to "willfully infringe a patent, the patent must exist and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). Civix has failed to point to any evidence that Expedia actually knew of the published application, let alone that Expedia knew of the asserted patents after they issued and before Civix filed suit. There is no genuine dispute that Expedia did not have actual knowledge of the asserted patents until the filing of this lawsuit. Accordingly, Expedia did not have a duty of due care with respect to those patents until this suit began.

Expedia argues that at no time after the filing of this suit has it ever believed that it infringed asserted patent claims that were valid and enforceable. Expedia points to the fact that it has several nonfrivolous defenses. Civix counters by pointing out that Expedia is not relying on any opinions of counsel and argues that Expedia's defenses are frivolous. Regarding Civix's reliance on the fact that Expedia did not obtain opinions of counsel, the Federal Circuit has recently held that "the failure to obtain an exculpatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable." See *Knorr-Bremse*, 383 F.3d 1337, 1345-46. Even absent an adverse inference from the lack of an opinion of counsel, the Court still looks to the totality of circumstances. *Id.* The only circumstances that Civix points to in arguing that Expedia willfully infringed the asserted patents, are that Expedia's defenses are frivolous and that Expedia did nothing to avoid

infringement after Civix filed this suit. (DSAUF ¶ 48.) There is no genuine dispute that
Expedia's defenses are not frivolous. In particular, the invalidity defenses for each of the
seventeen claims asserted by Civix constitute "substantial defenses". *Knorr-Bremse,* 383 F.3d at
1347 (existence of a substantial defense is a factor to consider in analyzing whether infringement
was willful.) Civix has not moved for summary judgment on any of Expedia's defenses other
than inequitable conduct. Further, on the record before it, the Court finds that a reasonable jury
could find for Expedia on its invalidity defenses. Accordingly, Expedia has presented legitimate,
non-frivolous defenses for each of Civix's asserted claims.

Therefore, the only circumstance that possibly weighs in favor of a finding of willful
infringement is that Expedia did not stop its allegedly infringing activity, or seek an opinion of
counsel, upon the filing of this suit. The Federal Circuit has held, however, that the mere fact
that an accused infringer continues its infringing activity cannot support a finding of willfulness
where the accused infringer presents legitimate defenses and did not know of the asserted patents
until the filing of the suit. *See Gustafson, Inc. v. Intersystems Indus. Prods., Inc.,* 897 F.2d 508,
511 (Fed. Cir. 1990).[39] Here, there are no genuine disputes that Expedia presents substantial
defenses to Civix's charges of infringement and did not learn of the asserted patents until Civix
filed this lawsuit. Civix points to no evidence that Expedia ever had a culpable state of mind

---

[39]Civix relies on *Crystal Semiconductor Corp. v. Tritech MicroElectronics Int'l, Inc.,* 246
F.3d 1336 (Fed. Cir. 2001) for the proposition that the Federal Circuit has limited the holding of
*Gustafson. Crystal Semiconductor* is inapposite. There, the Federal Circuit specifically noted
that "the record shows that TriTech copied Crystal's patented parts to develop the infringing
devices." *Id.* at 1352. Civix points to no evidence that Expedia copied Civix's technology in
designing its accused system. Unlike *Crystal Semiconductor,* here there is no evidence upon
which a jury could find that Expedia did not exercise due care after learning of the asserted
patetns.

regarding the alleged infringement. Therefore, just as in *Gustafson,* the lack of circumstances supporting willfulness precludes a finding of willfulness, as a matter of law.[40] Accordingly, there is no triable issue that the totality of circumstances do not demonstrate willfulness on the part of Expedia and the Court grants summary judgment for Expedia on this issue.

## VII. Civix's Proof Of Date Of Invention

Expedia contends that Civix's evidence is insufficient, as a matter of law, to prove any date of invention prior to September 27, 1994 for the asserted claims of the Civix patents that include the "Internet" as a limitation.[41] Civix argues that it has sufficient evidence such that a jury could find that the named inventors of the Civix patents had conceived of those claims by May 31, 1994. Conception "is the formation 'in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *See Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376 (Fed. Cir. 1986). To establish conception, a patentee must demonstrate "possession of every feature recited in the count, and that every limitation of the count must have been known to the inventor at the time of the alleged conception." *Coleman v. Dines,* 754 F.2d 353, 359-60 (Fed. Cir. 1985). The Federal Circuit has recognized that the lure of protecting a patent may tempt a testifying

---

[40]The Court recognizes that there are no per se rules regarding willfulness and that a substantial defense, by itself, is not sufficient to defeat liability for willful infringement. *Knorr-Bremse,* 383 F.3d at 1347. As discussed, based on a review of the totality of circumstances, viewing the evidence in the light most favorable to Civix, no reasonable jury could find that Expedia's infringement, if proven at trial, was willful.

[41]Of the thirteen claims from the Civix patents that Civix asserts against Expedia, eight of those claims include the "Internet" as a limitation. Expedia's motion for summary judgment related to the named inventors' evidence of invention prior to September 27, 1994 is only directed to those eight claims including the "Internet" limitation.

inventor to remember facts favorable to its case and therefore requires corroboration where a party seeks to prove conception through an inventor's oral testimony. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). In determining whether corroborating evidence is sufficient, courts apply a rule of reason analysis. *Id.* Under this analysis, "an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." *Id.*

Civix points to the testimony of William Semple, one of the named inventors as evidencing a date of conception of May 31, 1994. (DSAUF §§ 49-50.) Although Semple was limited in the specific details of conception that he could remember, he referenced various documents supporting the conception of the co-inventors. One such document was a receipt demonstrating that Semple purchased a book called "Internet Directory" on April 11, 1994. (DSAUF § 50.) Semple testified that he used this book to determine applications for the claimed invention in the Civix patents. (*Id.*) Further, Civix points to a letter sent from Semple to another named inventor on April 5, 1994 identifying various features of the invention. (*Id.*) Expedia argues that because these documents are dated prior to May 31, 1994, they do not evidence a conception on May 31, 1994.[42] The Court disagrees. Civix may rely on evidence of aspects of the invention conceived prior to May 31, 1994 to demonstrate that the named inventors had conceived of the entire claimed invention by May 31, 1994. Viewed in its entirety, this evidence creates a genuine issue of fact whether Semple conceived of the claimed invention by May 31, 1994. In particular, under the Federal Circuit's rule of reason analysis, *Mahurkar*, 79 F.3d at

---

[42]Civix has represented to the Court that it is not seeking a conception date for the Civix patents prior to May 31, 1994.

1577, the jury could find that the corroborating evidence is sufficient to confirm the named inventor's credibility.[43] Accordingly, the Court denies Expedia's motion for summary judgment on the conception of the claims of the Civix patents with "Internet" limitations prior to September 27, 1994.[44]

## VIII. Inequitable Conduct

Expedia claims that the Civix patents are unenforceable due to inequitable conduct. The Federal Circuit has held that a "breach of the duties of candor, good faith, and honesty when prosecuting patent applications constitutes inequitable conduct." *Syntex (U.S.A.) LLC v. Apotex, Inc.,* 407 F.3d 1371, 1383-84 (Fed. Cir. 2005) (citing *Molins PLC v. Textron, Inc.,* 48 F.3d 1172,

---

[43]Civix also relies on a declaration from Elisabeth F. Neer (the "Neer Declaration"). Expedia moves to strike the Neer Declaration because Civix never disclosed Neer as a person with knowledge of Civix's claims in its Rule 26(a)(1) disclosures. For the same reasons discussed related to the Kraft Declaration, the Court grants Expedia's motion to strike the Neer Declaration. Civix never disclosed Neer as a person with knowledge and offers no justifiable excuse for its delay. Given the late stages of this case, Expedia would be unfairly prejudiced if Civix was allowed to rely on the testimony of Neer. Civix argues that Neer's name was disclosed to Expedia during the deposition of William Semple on September 21, 2004. Expedia, however, was entitled to rely on the absence of Neer's name in Civix's initial disclosures and therefore assume that Civix would not rely on any testimony from Neer at trial. Accordingly, Civix's disclosure of the Neer Declaration in response to Expedia's motion for summary judgment was inexcusably untimely.

[44]As the Federal Circuit held in *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.,* 26 F.3d 1112, 1115 (Fed. Cir.1994), the burden of persuasion regarding invalidity remains with the accused infringer. Although the burden of producing evidence of prior invention shifts to the patentee once the accused infringer has made a prima facie case of invalidity, the burden of persuasion related to the issue of prior invention remains with the accused infringer. Here, Civix has shown that it can meet its burden of production if Expedia is able to make a prima facie case of invalidity based on the Behr '789 patent and Topaz system prior art. Civix has failed to show that there is no genuine dispute that it will meet its burden of persuasion that Civix's evidence of prior invention is insufficient. Accordingly, the Court does not address the issue of whether this issue is ripe at the summary judgment stage prior to Expedia making a prima facie case of invalidity based on the Behr '789 patent and Topaz system prior art.

1178 (Fed. Cir. 1995)). When alleging inequitable conduct due to failure to disclose material information, a defendant must prove by clear and convincing evidence: (1) information that was material to patentability; (2) the applicant's knowledge of that information and its materiality; and (3) the applicant's failure to disclose the art resulting from an intent to mislead the PTO. *Elk Corp. of Dallas v. GAF Bldg. Mat'ls Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999). Information is material when "there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.* __F.3d__, 2005 WL 1981449, *4 (Fed. Cir. Aug. 18, 2005). If information that someone involved in the prosecution of the patent withholds from the PTO is cumulative of other references considered by the examiner, the information is not material. *Id.* "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence." *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1324 (Fed. Cir. 2000). The Federal Circuit has recognized that "[i]ntent need not, and rarely can, be proven by direct evidence." *Bruno Independent Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005) (quoting *Merck & Co., Inc. v. Danbury Pharm. Inc.*, 873 F.3d 1418, 1422 (Fed. Cir. 1989). Absent a credible explanation, "intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Bruno Independent*, 394 F.3d at 1354.

Expedia bases its inequitable conduct claims on either the failure to disclose to the PTO, or misreprensation of, information related to both the Colorado and NavTech litigations. In particular, regarding the Colorado litigation, Expedia contends that Mr. Vock never advised the PTO of the existence of that litigation, withheld material information arising out of that

55

litigation, and falsely represented documents from that litigation to the PTO. Regarding the NavTech litigation, Expedia argues that Mr. Vock failed to disclose to the PTO the existence of that litigation and also failed to disclose documents from NavTech related to NavTech's alleged conception of the patented invention.

Civix moves for summary judgment of no inequitable conduct. Civix argues that Expedia cannot prove the required elements of inequitable conduct because: (1) Mr. Vock did not misrepresent prior art; he merely advocated an interpretation of prior art before the Examiner, while the Examiner performed his own independent evaluation; (2) Mr. Vock informed the Examiner of the existence of the Colorado litigation, the NavTech litigation, and the NavTech interference provocation; (3) Mr. Vock disclosed all material references from the Colorado litigation and the NavTech litigation; (4) there is no evidence that Mr. Vock or any other person involved in the prosecution of the patents-in-suit intended to deceive the Patent Office. Because genuine issues of fact exist on each of these issues, Civix's arguments fail.

## A. Whether Mr. Vock Disclosed The Colorado And NavTech Litigations To The Examiner

Civix contends that the deposition testimony of Mr. Vock is uncontested and demonstrates that Mr. Vock did disclose to Examiner Alam the existence of the Colorado and NavTech litigations. Expedia points to the file histories for the Civix patents, arguing that no clear record exists that Mr. Vock or anyone else substantively involved in the prosecution of the Civix patents informed the PTO of the existence of either the Colorado or NavTech litigation. (DSAUF ¶¶ 15, 47.) Further, Expedia relies on the testimony of Civix's expert, agreeing that "all substantive business [with the PTO] should be in writing." (*Id.* ¶ 46.) This creates a triable issue of fact whether Mr. Vock disclosed to the PTO the existence of the Colorado or NavTech

litigations.[45]

### B. Whether Mr. Vock Failed To Disclose, Or Misrepresented, Material Information To The Examiner

#### 1. The Colorado Litigation Pleadings

Expedia asserts that Civix committed inequitable conduct by failing to disclose to the PTO certain pleadings from the Colorado Litigation. In particular, Expedia argues that Civix withheld from the PTO summary judgment motions filed by certain defendants in the Colorado litigation. Civix does not dispute that Mr. Vock failed to submit to the PTO the summary judgment motions from the Colorado litigation. Rather, Civix contends that such pleadings were immaterial, or cumulative of information already before the examiner.

Certain summary judgment motions submitted in the Colorado case argued that the claims of Civix's '525 patent were invalid. (DSAUF ¶ 16.) In February 2001, in connection with the prosecution of the Civix patents, Vock submitted an IDS listing 598 prior art references from the Colorado litigation to the PTO. (*Id.* ¶ 19.) In an office action issued on August 21, 2001, the PTO Examiner noted the "mountain" of prior art that Civix had presented to the PTO. (*Id.* ¶ 20.) The Examiner further noted that Civix was in a better position than the PTO to determine which of the references in the "mountain" of prior art were pertinent:

> Since the applicants have filed the IDS, it can be reasonable [sic] inferred that they are more likely to know which of the 598 references are relevant to the claimed invention. If the applicants have filed the IDS without knowing the

---

[45]Because the Court finds that a genuine dispute exists whether Mr. Vock disclosed to the PTO the existence of the Colorado or NavTech litigations, the Court does not reach the issue of whether Mr. Vock's failure to clearly identify the disclosure of the litigations in the prosecution histories bars Civix, by estoppel, from contending that such a disclosure did take place. The Court also does not reach the issue of whether Mr. Vock's deposition testimony is inadmissible hearsay.

relevance of references to the claims, then it would be reasonable to explore the necessity of such filing.

(*Id.* ¶ 21.) Expedia argues that the Colorado pleadings would have pinpointed the most pertinent of the prior art for the Examiner to consider. The Court agrees with Expedia. Given the Examiner's expressed difficulty in analyzing the "mountain" of prior art submitted by Civix, triable issues of fact exist whether the Colorado pleadings, were material and non-cumulative.

Expedia also asserts that Civix misrepresented the teachings of the prior art to the PTO. On October 17, 2001, Mr. Vock conducted an interview with Examiner Alam of the PTO. (*Id.* ¶ 23.) The Examiner's Interview Summary provides "The examiner provided the above cited references to the Applicant and indicated that the fetching of spatial data from a remote database through a remote port for directional purposes and link is not taught by the applied prior art of record. The examiner suggested that the Applicant file amendment by incorporating these features." (*Id.* ¶ 24.) On December 17, 2001, the Examiner issued a Notice of Allowance in connection with the '307 patent stating:

> The prior art of record, as discussed at length in the interview dated October 17, 2001, teaches the retrieval of spatial item of interest, however, does not teach the fetching of the item from a remote database as claimed.

> Claim 38, the only pending independent claim recites "a port" that is located at a "second location" and a "database" of spatial information of interest that is "not located at the second location." The claim is allowed as being unique [sic] combination of elements as recited. The notable distinction over the prior art of record is that the database that is providing the spatial details for the item of interest is not located at the second location where the retrieving port is located. The examiner believes this particular feature meets the suggestion provided in the October 17, 2001 interview with the Applicants and his representative. The Applicant have [sic] also indicated that none of the references in the Information Disclosure Statement, filed on February 8, 2001, teach the fetching of spatial data from a remote database as recited in the claims.

(*Id.* ¶ 25.) Relying on the testimony of its technical experts that analyzed the prior art before the

examiner, Expedia contends that Civix's indication to the Examiner that "none of the references in the Information Disclosure Statement, filed on February 8, 2001, teach the fetching of spatial data from a remote database as recited in the claims" was false. (*Id.* ¶ 26.) Accordingly, a triable issue of fact exists whether Civix misrepresented to the PTO the content of the prior art it was submitting.

### 2. The NavTech Conception Documents

Expedia asserts that Civix committed inequitable conduct by withholding from the PTO the NavTech Conception Documents. Mr. Vock testified that he was aware of the NavTech Conception Documents, reviewed those documents, and consciously decided not to provide those documents to the PTO. (*Id.* ¶¶ 48-49.) Expedia argues that the NavTech conception documents demonstrate that NavTech, not Civix, was the first to invent the claimed subject matter of the Civix patents, relying on the testimony of its technical experts. (*Id.* ¶ 45.) Expedia also points to one of the NavTech Conception Documents discussing a possible public demonstration of the claimed invention in 1993. (*Id.* ¶ 43.) The Manual of Patent Examining Procedure provides that "questions of inventorship" and of "possible prior public use or sales" are examples of material information. MPEP § 2001.06(c) (2001). Accordingly, genuine questions of fact exist whether the NavTech Conception Documents were material and non-cumulative.

### D. Whether Mr. Vock Intended To Deceive The PTO

Civix contends that there is no evidence that Civix acted with an intent to deceive the PTO. The Federal Circuit has recognized that because direct evidence of intent is rarely available, courts may infer intent from the surrounding circumstances. *Critikon, Inc. v. Beckton*

*Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). Here, sufficient evidence exists such that genuine questions of fact exist whether Civix acted with intent. Expedia points to Mr. Vock's admission that he consciously decided not to disclose the NavTech Conception Documents to the PTO (*Id.* ¶ 43) and the high level of materiality of the withheld information, relying on the testimony of its technical experts (*Id.* ¶ 26). Also, Expedia relies on the Examiner's specific request for assistance in finding the most pertinent prior art in the "mountain" of prior art submitted to the PTO, (*Id.* ¶ 20), and Civix's undeniable familiarity with the events in the Colorado and NavTech litigation. Additionally, questions of fact exist whether Mr. Vock even disclosed the mere existence of the Colorado and NavTech litigations, let alone, the information from those litigations already discussed. (*Id.* ¶ 15.) Viewing all of the circumstances, triable issues of fact exist whether Civix intended to deceive the PTO, and the Court denies Civix's motion for summary judgment of non inequitable conduct.

E.    **Expedia's Abandoned Inequitable Conduct Theories**

In its Reply Brief, Civix requests partial summary judgment on Expedia's inequitable conduct theories for which Expedia does not refute Civix's arguments for summary judgment. The Court agrees with Civix. The Court grants partial summary judgment for Civix on Expedia's claims that the mere submission of a large quantity of prior art documents, by itself, constituted inequitable conduct, Civix's submission of foreign-language references without translations, Civix's failure to inform the Examiner of the existence of the NavTech interference attempt and Settlement Agreement, and Civix's failure to submit an IDS in the '622 patent

application.[46]

---

## CONCLUSION

Because genuine questions of material fact exist, the Court denies Expedia's motion for summary judgment of noninfringement, invalidity, and on Civix's proof of date of invention. The Court grants in part and denies in part Expedia's motion for summary judgment on Civix's entitlement to pre-filing damages on the '307, '622, '291, and '692 patents. The Court also grants Expedia's motion for summary judgment of no willfulness. The Court denies in part and grants in part Civix's motion for summary judgment of no inequitable conduct.

Additionally, the Court denies Civix's motion to strike Expedia's declarations from Andrew Coldham, Sendi Widjaja, David Eastburn, and Bruce Covill. The Court grants in part and denies in part Expedia's motion to strike Civix's declarations from Clifford Kraft, Lee Hancock, John Rehfeld, Elisabeth Neer, and Narain Gehani. Specifically, the Court strikes the Kraft, Rehfeld, and Neer Declarations. The Court denies Expedia's motion regarding the Hancock Declaration to the extent it contains fact testimony, and strikes any expert testimony. The Court denies Expedia's motion regarding the Gehani Declaration to the extent it addresses issues related to the validity of the '692 patent, and strikes the Gehani Declaration to the extent it addresses infringement issues.

DATED: September 14, 2005                    ENTERED

AMY J. ST(EVE)
United States District Court Judge